### SLAYBACK v. RAYMOND et al.

(Supreme Court, Appellate Division, First Department.   April 22, 1904.)

1. EQUITABLE JURISDICTION—TRUSTS IN PERSONALTY—DELIVERY FOR SPECIFIC PURPOSE.

    Where stock in a corporation was delivered by a stockholder to an officer of the corporation under an agreement that it was to be transferred by the officer to a capitalist to induce him to give the corporation financial and other aid, the officer held the stock in trust for the purpose for which it was delivered to him, so that, on his failure to so use it, equity had jurisdiction to enforce an accounting.

2. SAME—RESCISSION.

    It appearing that the officer never intended to use the stock for the purpose for which it was delivered to him, equity also had jurisdiction to enforce a rescission of the contract and redelivery of the stock.

3. FRAUD—LIMITATION OF ACTIONS.

    A stockholder in a corporation, who was also creditor thereof, delivered stock to an officer of the corporation under an agreement that it was to be transferred to a certain capitalist to induce him to render financial assistance and uphold the credit of the corporation.   The officer had, at the time the stock was delivered to him, no intention of transferring it as agreed, and did not transfer it.   Held that, though the credit of the corporation was maintained, the transaction was fraudulent as against the stockholder, so that under Code Civ. Proc. § 382, subd. 5, the stockholder's right of action was not barred by limitations until six years after his discovery of the facts constituting the fraud.

4. SAME—DISCOVERY OF FRAUD—VIGILANCE.

    A person who has been defrauded owes no duty to exercise vigilance in discovering fraud and taking prompt steps to rescind the contract induced thereby.

Appeal from Special Term.

Action by John D. Slayback against Charles M. Raymond and another. From a judgment for plaintiff (83 N. Y. Supp. 15), defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and HATCH, JJ.

Louis Marshall, for appellants.

Delos McCurdy, for respondent.

HATCH, J. The careful consideration which this case received at the hands of the learned trial judge, and the full discussion which was had of the facts and the law, has rendered our labor in disposing of the questions involved comparatively easy. We do not feel called upon to again recite the facts, which have been elaborately reviewed by the learned court below. Indeed, we should not find it necessary to give any expression of our views herein, were it not for the earnest insistence of counsel for the appellants that the court adopted erroneous rules of law in making disposition of the controversy. He earnestly contends that the plaintiff has an adequate remedy at law in the recovery of damages for the wrong which he claims to have been done him, in consequence of which the defendants are entitled to a trial by jury of the question of fact which the case presents. We are unable to support this contention. When the stock was delivered by Slayback to Raymond, it was upon the distinct understanding and agreement that it was to be delivered to Hemphill, Sr., for the purpose of inducing him to come to the rescue of the Carbon Steel Company by sustaining its credit. Plaintiff was pecuniarily interested in securing the continued credit and solvency of the Carbon Steel Company, in order that the securities which he held of the company might remain valuable, and also that it might be able to discharge the indebtedness held by the plaintiff and his wife against it. The stock was delivered to Raymond under such circumstances as brought the latter into a fiduciary relation with the plaintiff. In fact, he held the stock in trust, for delivery to Hemphill, having for its object the continued solvency of the Carbon Steel Company and the maintenance of its credit. Raymond had no right or authority to divert this stock from such purpose, and when he transferred it to his nephews and nieces, and failed to make use of it with Hemphill in securing the credit of the company, he was guilty of a breach of trust, violated his fiduciary duty, and rendered himself liable to account for the stock, its proceeds and earnings. If we substitute for the delivery of stock by the plaintiff to Raymond the delivery of money for the specific purpose for which Raymond was to use the stock, we have in all essential respects the case which was presented in Marvin v. Brooks, 94 N. Y. 71. In that case there was a delivery of money to be expended for a specific purpose, and the court, in holding that equity acquired jurisdiction of the subject-matter and could compel an accounting of the money thus received, said:

"But the jurisdiction of the latter court over trusts and those fiduciary relations which partake of that character remains, and in such cases the right to an accounting seems well established."

Here the stock was delivered for a specific purpose agreed upon between the parties. There would have been no delivery of the stock had the declared purpose of its use not been made obligatory upon Raymond. Having obtained possession of the stock under these circumstances, equity will lay hold of the transaction and require him to account for the manner in which he has performed the duties devolved upon him, and upon him rests the burden of showing that he has discharged the trust reposed in him with fidelity. The doctrine of this case has never been disturbed in this state, and the same rule applies in an accounting for property as for money received under such circumstances. Schantz v. Oakman, 163 N. Y. 148, 57 N. E. 288; Underhill v. Jordan, 72 App. Div. 71, 76 N. Y. Supp. 266. In addition to this, it appears that plaintiff's remedy at law is inadequate. He was not only authorized to recover any damage which was sustained by reason of the diversion of the stock, but, upon discovering the fraud perpetrated upon him, he became entitled to a rescission of the entire transaction and the return of the stock, so far as the stock remained under the control of Raymond, or so far as the plaintiff was able to follow it into the hands of others than bona fide holders. Rescission of a contract may be had where a party has been defrauded in making it, and the property remains in a form unaffected by accruing bona fide rights, and where change has not been worked in the rights of third parties as would render inequitable such rescission so far as it applied to these. This rule has been uniformly applied in the case of agencies through which unfair and fraudulent dealings have been had. Erlanger v. New Sombrero Phosphate Co., L. R. 3 App. Cas. p. 1218.

It is the right of the plaintiff to have restored to him the property which has been misapplied, and to receive benefits therefrom so far as the same may be derived from the present situation and the rights of innocent third parties will not be prejudiced. This entitles him to a return of the stock for the purpose of surrendering it in order that an equivalent of shares may be issued to him by the new corporation. This relief he cannot obtain in an action at law, and to this relief the plaintiff is entitled. Pollock v. National Bank, 7 N. Y. 274, 57 Am. Dec. 520; Cushman v. Thayer Mfg. Jewelry Co., 76 N. Y. 365, 32 Am. Rep. 315; Bedford v. American Aluminum, etc., Co., 51 App. Div. 537, 64 N. Y. Supp. 856. The same principle is recognized in Bosley v. N. M. Co., 123 N. Y. 550, 25 N. E. 990, relied upon by the appellant. The fact that a rescission may not be practicable upon the rendition of a judgment does not oust the court of its equitable jurisdiction. Having once acquired jurisdiction, it may retain it and award a money judgment where there would otherwise be a failure of justice. Valentine v. Richardt, 126 N. Y. 272, 27 N. E. 255. It is made to appear in the present case that a large proportion of the stock which was delivered to Raymond still remains under the latter's control, is capable of delivery, and when delivered can be surrendered for shares in the new company. Upon both grounds, therefore, that a fiduciary relation creating a quasi trust existed which entitled the plaintiff to an accounting, and also upon the right to a

rescission of the transaction and a return of the stock, the plaintiff has shown right to invoke the·equitable jurisdiction of this court.

It is a rule of law, firmly settled, that, before a judgment can be reversed as against the weight of evidence, it must appear that the proof offered clearly preponderates in favor of a result contrary to that which was reached. Mere differences of opinion respecting the conclusion which ought to be reached is not sufficient to justify the reversal of a judgment as being against the weight of evidence. Aldridge v. Aldridge, 120 N. Y. 614, 24 N. E. 1022; Roosa v. Smith, 17 Hun, 138. In the present case the proof adduced to show fraud and a breach of duty is in many respects contradictory. We have carefully read the entire record and the argument of counsel upon such subject. The most that can be said in favor of the appellants' position upon this branch of the case is that a finding in favor of the defendants would have had some evidence to justify it, and, perhaps, enough to support it; but it is equally clear that the evidence is sufficient in support of the conclusions reached by the learned trial court, and therefore we would not be justified, under well-settled authority, in reversing the judgment for this reason. Indeed, after a full and complete examination, we are not prepared to say that we should have reached a conclusion adverse to the views of the trial court. On the contrary, we think his conclusion finds ample support in the testimony. The court below in its opinion did not assume to state all of the facts in favor of its conclusion which are found in the record. He was not bound so to do, and no useful purpose would now be served by analyzing the entire proof upon this subject. It is enough to announce our conclusion thereon.

It is undisputed that Raymond procured .the delivery to himself of these shares of stock, but he acquired thereby no title to the same, or right to the possession, except for a specific purpose. The purpose for which they were delivered was therefore the only matter in dispute. It is established by the findings of the trial court that the stock was diverted by Raymond from the use to which he alone had legal right to devote it, and such finding is supported by the evidence. By such act plaintiff suffered damage in the loss of his stock, and it does not answer to say that, notwithstanding the stock was not used for the purpose for which it was delivered, the credit of the company was maintained. Raymond was interested in the maintenance of the credit of the company, and in his position as president he was bound to do all things within his power to do to maintain the standing and credit of the company and discharge its obligations, and this he was bound to do quite irrespective of the delivery of the stock to him. It was not delivered to him as a gift, but to be used for a specific purpose, and its diversion from such use charged Raymond with liability, without regard to the fact that the credit of the company continued to be maintained. The plaintiff desired to secure the active efforts of a man of wealth, who was possessed also of sound business judgment, and was willing to deliver his stock based upon the consideration that such service would thereby be secured. Concededly, the stock was not used for such purpose, and, not being so used, it remained the property of the plaintiff, and the fraudulent diversion of it operated to damage the plaintiff to

the extent of its value, and this is so even though a use was contemplated which would permanently deprive the plaintiff of it. His interest and ownership, however, could not be severed from the stock, unless it was used for the particular purpose for which it was delivered, and to that purpose concededly it was never devoted. Raymond procured the delivery of the stock upon the representation that it was to be delivered to Hemphill to induce him to come to the relief of the company. Raymond's own statement shows that he at no time intended to use the stock for any such purpose; consequently the representation was false to his knowledge. Slayback was deceived thereby, and continued to be deceived respecting the disposition which was made of the stock, and by such act he suffered damage to the extent of the value of the stock. This, within the authorities relied upon by the appellants, furnishes the essential requisites out of which arises the cause of action. Brackett v. Griswold, 112 N. Y. 454, 20 N. E. 376; Aron v. De Castro (Sup.) 13 N. Y. Supp. 372, affirmed 131 N. Y. 648, 30 N. E. 491. The fraud which the court has found was perpetrated upon the plaintiff was committed in 1893. The action was not begun until 1900. The six-years statute of limitation applied, and concededly it would have run had not other matters interposed to prevent it. The case falls within the provisions of subdivision 5 of section 382 of the Code of Civil Procedure, which provides that, as to a cause cognizable in a court of chancery on the 31st day of December, 1846, it is not barred by the six-years statute of limitations, and the cause of action "is not deemed to have accrued until the discovery by the plaintiff, or the person under whom he claims, of the fact constituting the fraud." The court found that the plaintiff first learned of the fraud practiced upon him by Raymond about the month of July or August, 1898, and that in the month of October, 1899, he demanded of Raymond the return to him of the stock. Robinson testified that he had a conversation with Raymond in 1898 or 1899, and, after having discovered that the stock had not been delivered to Hemphill, he asked the defendant Raymond to return it to the plaintiff, which he declined to do, and that he (Robinson) informed the plaintiff of the fact early in 1898. The plaintiff testified that he first had information upon the subject in 1898, in the spring of that year. This testimony was undisputed. So far, therefore, as direct evidence goes, it shows that the statute of limitations within the provisions of the Code, to which we have called attention, had not run when the action was begun. Such testimony, however, would not avail to defeat the application of the statute of limitations if the plaintiff ought to have discovered the fraud which had been perpetrated upon him within a time when the six-years statute would have run. The rule in such a case, as stated by Judge Finch in Higgins v. Crouse, 147 N. Y. 411, 42 N. E. 6, is:

"Did any facts come to the plaintiff's knowledge which fairly put him on inquiry as to the commission of a fraud, which in the mind of an ordinary man would have awakened suspicion, and which made it the duty of the plaintiff to further investigate?"

The appellants contend that the facts disclosed by this record conclusively established that the plaintiff was possessed of such knowledge

and occupied such a relation to the corporation that he was afforded an abundant opportunity to inform himself concerning the status of the corporation and who its stockholders were; that the books were open for his inspection, and no obstacle lay in the way of the fullest examination. Many items of evidence are adduced by the appellants in favor of this contention. The learned trial court, however, made a complete and exhaustive examination of nearly all of the items of the testimony now called to our attention, and the conclusion which he reached after such examination, we think, was abundantly justified by the evidence, and sufficient to exonerate the plaintiff from any imputation of negligence in failing earlier to discover the fraud. We do not deem it necessary to again analyze in detail and make several answers to this claim of the appellants. While it is true that the learned trial court held that no negligence could be imputed which would defeat the plaintiff in maintaining the action, after the discovery of the fraud, short of the running of the six-years statute of limitations, and in his discussion limited the time when the plaintiff might have acquired knowledge to the 5th day of January, 1904, which embraced the period of six years between that date and the commencement of the action, yet the same result flows from the facts as they were developed upon the trial, even though the matter be extended to August, 1898. In applying this rule, we are to bear in mind that the plaintiff owed the defendants no duty of active vigilance in discovering the fraud and taking prompt steps to rescind the contract. Baker v. Lever, 67 N. Y. 304, 23 Am. Rep. 117; Delano v. Rice, 23 App. Div. 327, 48 N. Y. Supp. 295. The plaintiff had the right to rely upon the representations and to rest in confidence that Raymond would discharge the trust which he had reposed in him, and, as the credit of the company continued to be maintained, he was lulled into the belief that the measures which he had taken to secure it had been carried out in the manner suggested, and, being without suspicion, he was not called upon to investigate. What he could have discovered had his suspicions been aroused is not the test. It is what he ought to have discovered after being lulled into security by Raymond, and the apparent prosperity of the company which followed it. These matters, instead of arousing suspicion and prompting investigation, operated directly the reverse, by encouraging a belief that the things which the plaintiff believed would secure the continued prosperity of the company had been carried out. The court has found that the plaintiff had no knowledge of the fraud perpetrated upon him until 1898. The evidence justified the finding, and it also justified the conclusion of law reached by the court that the plaintiff had standing to maintain the action. These conclusions render it unnecessary to determine whether laches can be invoked as a defense for any act or omission prior to the time when the statute runs. There is much to be said in favor of the rule that it does not, and observations of learned judges trend in that direction. It is not essential to the maintenance of this action that such rule be invoked.

We conclude that upon the facts and the law the plaintiff became entitled to the judgment which has been rendered. It should therefore be affirmed, with costs. All concur.

INGRAHAM, J.   I concur in the affirmance of this judgment, upon the ground that the relation between the plaintiff and the defendant Raymond was in its nature fiduciary, entitling the plaintiff to require Raymond to account for the stock that was placed in his hands to carry out what was understood to be the common object of the parties—to rehabilitate the credit of the corporation in which they both were largely interested.   The court below has found that Raymond induced the plaintiff to deliver his stock in the\corporation in which the parties were interested, for the purpose of procuring with that stock the active assistance necessary to enable the company to continue its business. The misrepresentations by which the delivery of that stock was induced are not material to enable the plaintiff to maintain his action to require Raymond to account for the stock that he received and which was to be applied by him for a particular purpose.   If Raymond induced the plaintiff to deliver the stock upon the statement that a specified use of the plaintiff's stock was necessary to enable the corporation to continue its business, and the plaintiff delivered that stock upon the representation and understanding that it was to be used to secure the active assistance of the Pittsburgh parties in the enterprise, and Raymond, receiving the stock for that special purpose, appropriated it to his own use, without having used it or being required to use it for that purpose, there would, I think, be a cause of action in equity for an accounting, irrespective of the fact that the original delivery of the stock was obtained by fraud.   If, after Raymond had received this stock, he had actually delivered it to those in Pittsburgh with whom he was in communication, I do not think this action could be maintained in the form in which it was brought; but as the court found, upon evidence which I think sustained the finding, that Raymond represented to the plaintiff that in order to induce those in Pittsburgh to become interested in the company it was essential that the plaintiff should transfer his stock to them, and that the plaintiff intrusted Raymond with the stock in question for that purpose, there arose as between the parties a fiduciary relation in regard to that stock, whereby Raymond became bound to treat the stock received from the plaintiff as property held by him in trust, to be used for the purpose for which it was delivered, and for which the plaintiff is entitled to compel Raymond to account.   Marvin v. Brooks, 94 N. Y. 71.

This also answers the claim of the defendants as to the statute of limitations, and although I agree with Mr. Justice HATCH that, upon the evidence, a finding that the plaintiff knew or should have known of the fraud which induced him to deliver the stock to Raymond before January, 1894, would have been without evidence to support it, my view of the nature of the action is that it is not controlled by subdivision 5 of section 382 of the Code of Civil Procedure, but that it comes under section 388, and the statute would not run until 10 years had elapsed from the time the cause of action accrued.   I also think that the finding of the referee is amply sustained by the evidence, and that no error was committed to justify a reversal of the judgment.