Frank H. Downey, Respondent, *v*. Thomas W. Finucane et al., Appellants, Impleaded with Others.

Stock corporations — promoters — fraud — liability of members of syndicate, organizing stock corporation, for false statements and misrepresentations made in prospectus issued and used to obtain subscriptions for bonds of such corporation.

1. The promoter of a company, whether he be a director or not, who knowingly issues or sanctions the circulation of a false prospectus containing untrue statements of material facts naturally tending to mislead and to induce the public to purchase its stock or other securities, is responsible to those who are injured thereby. Where there are a number of such promoters all the coadventurers are liable in damages for the fraud of an agent employed by them to effect the sale of the corporate securities without reference to their own moral guilt or innocence.

2. A fraudulent intent on the part of the author and publisher of a prospectus may be inferred from the falsity of the statements therein contained. Where a prospectus is circulated as an induce-

ment to take stock in a corporate enterprise its language is to be interpreted by the effect which it would produce upon an ordinary mind, and in estimating the probability of subscribers being misled by a prospectus the court may take into consideration not only the facts stated therein but the facts suppressed.

3. A syndicate agreement was prepared to carry into effect a plan to unite certain telephone interests for the purpose of establishing an independent system. The appellants became parties to this agreement and most if not all of them actually signed it. Four of their number also subscribed a considerable sum of money to the syndicate and the proof justifies the inference that they entered into the undertaking for individual profit, a common agent being largely trusted to devise and carry out the details of the enterprise. They contributed their money and confided in others with the expectation that the investment would yield large returns, being indifferent as to the method to be pursued. The basis of this action is the alleged falsity of the prospectus published to promote the sale of certain securities of the company organized to carry out the scheme. The plaintiff's right to recover rests upon the agency of the person who alone signed the prospectus, to act in defendants' behalf in endeavoring to procure subscriptions by means of the prospectus. *Held*, that the evidence authorized the finding that he acted as the agent of these defendants as members of such syndicate, and that his acts in furtherance of the enterprise and all that he did in reference to the prospectus must be deemed binding upon them.

4. Upon the examination of the evidence, *held*, that it authorized the submission to the jury of the question whether the statement that "413,030 shares of the capital stock of the U. S. Independent Telephone Company (the company formed to carry out the syndicate agreement) have been issued or are contracted to be issued" was fraudulent or not.

5. Representations were made in the prospectus with reference to the amount of dividends paid by one of the companies whose interests were acquired for the purpose of carrying out the scheme. *Held*, that a declaration that dividends have been paid imports that they have been earned, and that as the testimony of the treasurer and general manager showed that these dividends or some of them had not been earned in fact, it was not error to allow the jury to pass on the character of these representations.

6. The prospectus contained a statement that a certain amount of bonds was to be issued immediately and the balance was to be held in escrow by the trustees. It continued: Such "bonds are to be issued pursuant to contracts already made by the Company and

binding on it, and as a result of the performance of said contracts the Company will have $5,000,000 cash in its treasury, in addition to the securities pledged under the mortgage." The jury found that the language of this part of the prospectus fairly meant that contracts had been made which were mutually binding upon both parties and when performed the company would have $5,000,000 in the treasury; they also found that the prospectus was falsely worded so as to represent that the contract for the sale of the bonds was bilateral when the contract with the other party did not bind him to take the bonds. *Held*, that the evidence amply warranted these findings.

7. Five defendants claimed to be entitled to six peremptory challenges each, but the court allowed only six peremptory challenges in all, treating the defendants collectively as but one party. *Held*, that the defendants had a common interest; their answers were substantially identical and the defense was conducted in the common interest of all, and whatever might be the rule if different defenses, possibly antagonistic to one another, had been interposed, the defendants were properly treated as only one party within the meaning of section 1176 of the Code of Civil Procedure.

8. The foreman of the jury, after announcing that it had agreed, said: "We find for the plaintiff in the sum of $1,212.93, and recommend the clemency of the court" for certain defendants, naming them. *Held*, that the Appellate Division might have granted a new trial upon the ground that the nature of the action had not been brought clearly within the comprehension of the jurors, but since the form of the verdict was corrected by direction of the trial judge it presents no error cognizable by the Court of Appeals.

*Downey* v. *Finucane*, 146 App. Div. 209, affirmed.

(Argued February 15, 1912; decided April 12, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 15, 1911, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John G. Milburn* and *Walter S. Hubbell* for appellants. As it was claimed that the defendants were liable both as directors and as members of the syndicate, and

the case was submitted to the jury on that theory, it was error to refuse to charge that "if Mr. Fenn was selling the bonds for the United States Independent Telephone Company and not for the syndicate then he was not the agent of the individual directors of the company, and they, in that relation, only would be liable for personal conduct." (*Wakeman* v. *Dalley*, 51 N. Y. 27; *Arthur* v. *Griswold*, 55 N. Y. 400; *Cassidy* v. *Uhlmann*, 170 N. Y. 505; *Briggs* v. *Spaulding*, 141 U. S. 132; *People* v. *E. L. Assur. Society*, 124 App. Div. 714.) It was error to leave to the jury any question respecting the statements of the prospectus relating to the New York Independent Telephone Company. (*Ghee* v. *N. U. Gas Co.*, 158 N. Y. 510; *G. N. W. Ry. Co.* v. *N. Y. C. & H. R. R. R. Co.*, 163 N. Y. 228; *Purchase* v. *Matteson*, 25 N. Y. 212.) It was error to submit to the jury the question whether the representation that 413,030 shares of the capital stock of the United States Company had been issued or contracted to be issued was fraudulent. (*Blum* v. *Whitney*, 185 N. Y. 232; *O. D. C. Co.* v. *Lewisohn*, 210 U. S. 206; *Goodwin* v. *A. W. P. Co.*, 72 N. J. Eq. 645; *Tompkins* v. *Sperry*, 96 Md. 560; *Donald* v. *A. S. & R. Co.*, 61 N. J. Eq. 458; *McCarten* v. *P. G. Co.*, 69 Atl. Rep. 211; *D. H. N. W. R. Co.* v. *Kase*, 39 Atl. Rep. 301.) It was error to submit the representations as to the Stromberg Company to the jury. (*Bank of United States* v. *Davis*, 2 Hill, 451; *Maher* v. *T. Nat. Bank*, 111 N. Y. 433; *Atlantic Bank* v. *Savery*, 82 N. Y. 291.) It was error to submit to the jury the representation concerning the $17,000,000 of bonds to be issued pursuant to existing contracts, and the $7,000,000 thereof which had already been sold. (*Hallows* v. *Fernie*, L. R. [3 Ch. App.] 467–476; *Smith* v. *Chadwick*, L. R. [9 App. Cas.] 187; *Venezuela Railway* v. *Kisch*, L. R. [2 H. L.] 99; *Dwight* v. *G. Ins. Co.*, 103 N. Y. 341.) To warrant the submission of the case to the jury there must be evidence of fraudulent conduct on the part of the agents who prepared or issued the prospectus and con-

ducted the sale of the bonds; and there was no such evidence within the principle of the controlling cases. (*Kountze* v. *Kennedy*, 147 N. Y. 124; *Lyon* v. *James*, 97 App. Div. 385; 181 N. Y. 512; *Bell* v. *James*, 128 App. Div. 241; 198 N. Y. 513; *Polhemus* v. *Polhemus*, 114 App. Div. 781; *Duryea* v. *Zimmerman*, 121 App. Div. 560; *Thayer* v. *Schley*, 137 App. Div. 166.) The ruling of the court that the five defendants, although appearing by separate counsel, were limited to six peremptory challenges was error. (Code Civ. Pro. § 1176; *Stroh* v. *Hinchman*, 37 Mich. 490; *Hundhausen* v. *Atkins*, 36 Wis. 618; *State of Kansas* v. *Duerin*, 29 Kans. 688.)

*Alton B. Parker, Elbridge L. Adams, James M. E. O'Grady* and *John Desmond* for respondent. There was no error in the refusal to charge that if Mr. Fenn was selling these bonds for the United States Independent Telephone Company and not for the syndicate, he was not the agent of the individual directors of the company, and they in that relation only could be liable for personal conduct. (*Lamkin* v. *Palmer*, 164 N. Y. 201; *Avery* v. *Moore*, 133 Ill. 74; *Woolery* v. *L. R. Co.*, 107 Ind. 381; *Webber* v. *Read*, 65 Me. 564; *Brackett* v. *Griswold*, 112 N. Y. 454; *Mack* v. *Latta*, 178 N. Y. 533; *Miller* v. *Barber*, 66 N. Y. 558; *Vreeland* v. *Stone Co.*, 29 N. J. Eq. 195; *Morgan* v. *Skiddy*, 62 N. Y 319; *Weir* v. *Bell*, L. R. [3 Ex. Div.] 249; *Hornblower* v. *Crandall*, 7 Mo. App. 220; 78 Mo. 581.) The representation of the prospectus that as a result of the performance of certain contracts the company will have $5,000,000 cash in its treasury in addition to the securities pledged under the mortgage was a false and fraudulent representation. (*Schumacher* v. *Mather*, 133 N. Y. 594; *Arkweight* v. *Newbold*, L. R. [17 C. P.] 322; *Arnison* v. *Smith*, L. R. [41 Ch. Div.] 372; *Smith* v. *Chadwick*, L. R. [9 App. Cas.] 189; *Powers* v. *Fowler*, 157 Mass. 318; *Simon* v. *Goodyear*, 105 Fed. Rep. 573.) The representations of the prospectus touch-

ing the prosperity of the Stromberg-Carlson Company and its large dividends were false to the knowledge of Finucane, whose knowledge is imputable to the members of the syndicate. (*Ottinger* v. *Bennett,* 203 N. Y. 554.) The representations touching the New York Independent Telephone Company and its franchise were fraudulently deceptive, as stating absolutely as true that which was at best doubtful, and known to be; and suppressing and concealing important facts which would have given a different color to what was stated. (*Eaglesfield* v. *Londonderry,* L. R. [4 Ch. Div.] 593; *Wiser* v. *Lawler,* 189 U. S. 260.) The representation that "413,030 shares of the capital stock of the United States Independent Telephone Co. have been issued, or are contracted to be issued," was fraudulent. (*See* v. *Heppenheimer,* 69 N. J. Eq. 36; *Eaton Nat. Bank* v. *A. B. & T. Co.,* 70 N. J. Eq. 721; *Donald* v. *A. S. & R. Co.,* 62 N. J. Eq. 729; *Honeyman* v. *Haughey,* 66 Atl. Rep. 582; *Hebbard* v. *S. C. Co.,* 55 N. J. Eq. 18; *Edgerton* v. *E. I. Co.,* 50 N. J. Eq. 354; *K. I. Co.* v. *Assessors,* 65 Atl. Rep. 913; *Boynton* v. *Andrews,* 63 N. Y. 93; *Douglass* v. *Ireland,* 73 N. Y. 104; *Huntington* v. *Attrill,* 118 N. Y. 365.) Defendants were collectively entitled to only six peremptory challenges. (*Schmidt* v. *C. R. R. Co.,* 83 Ill. 405; *Gordon* v. *Chicago,* 201 Ill. 623; *Stone* v. *Sequr,* 93 Mass. 568; *Snodgrass* v. *Hunt,* 15 Ind. 274; *Bryan* v. *Harrison,* 76 N. C. 360; *State* v. *Reed,* 47 N. H. 466; *Sadousky* v. *McGee,* 4 J. J. Marsh. 267; *Blackburn* v. *Hays,* 44 Tenn. 227; *Hargrave* v. *Vaughn,* 82 Tex. 347; *Waters-Pierce Oil Co.* v. *Burrows,* 77 Ark. 74.)

Willard Bartlett, J. This is a civil action to recover damages for fraud and deceit. There was a general verdict in favor of the plaintiff and twenty special questions were submitted to the jury to answer.

A curious feature in the record is the form of the verdict as originally rendered. After announcing that the

jury had agreed, the foreman said: "We find for the plaintiff in the sum of $1,212.93 and recommend the clemency of the court for Messrs. Eastman, Sibley, Strong and Watson."

It is suggested that the nature of the action had not been brought clearly within the comprehension of jurors who could agree upon such a verdict as this, and that they evidently supposed that they were sitting in a criminal tribunal. The Appellate Division might have granted a new trial on this ground; but the form of the verdict was corrected by direction of the trial judge and it now presents no legal error cognizable in this court.

The basis of the action is the alleged falsity of a prospectus published to promote the sale of the securities of the United States Independent Telephone Company. This prospectus was not prepared or signed by any of the appellants. The sole signature to the prospectus is that of Albert O. Fenn, care Alliance Bank, Rochester, N. Y. The plaintiff's right to recover, therefore, rests upon the agency of Fenn to act in their behalf in endeavoring to procure subscriptions by means of the prospectus. The United States Independent Telephone Company was a holding corporation organized to acquire the control of several corporations through whose powers, rights and franchises an independent telephone business might be established in New York and other parts of the country. At the time of the publication of the prospectus it had obtained a majority of the authorized capital stock of two other corporations: *First,* the New York Independent Telephone Company; and *second,* the Stromberg-Carlson Telephone Manufacturing Company. The New York Independent Telephone Company had acquired an alleged franchise originally granted to the Mercantile Electric Company which was supposed to authorize the introduction, construction and operation of an independent telephone system in the streets of the city of New York, and this alleged franchise plays the most prominent part in the

17

present litigation.    The Stromberg-Carlson Telephone
Manufacturing Company was a corporation engaged in
the manufacture of telephone instruments and appliances
in the city of Rochester.

The defendant Finucane was largely interested in the
latter company and in 1904 he and the defendant Eugene
Satterlee (now deceased) appear to have formed a scheme
to unite the interests of the Stromberg-Carlson Company
with a number of telephone operating companies for the
purpose of establishing an independent system to compete
with the so-called Bell companies, particularly in the city
of New York.    With the assistance of Mr. William H.
Page of New York, a lawyer, a syndicate agreement was
prepared to carry this design into effect.    The plaintiff
was not able to procure this agreement or a copy of it to
introduce into evidence upon the trial.    The original
appears to have been kept by Mr. Page who was not a
witness.    It was clearly proved, however, that the appel-
lants became parties to this agreement and that most if
not all of them actually signed it.    Sibley admits sub-
scribing $50,000 to the syndicate; Strong admits that he
subscribed $25,000 through Fenn; Eastman admits sub-
scribing $25,000, although he remembers no paper; and
Watson admits subscribing $50,000.    Further proof justi-
fied the inference that the defendants Sibley, Strong,
Eastman and Watson entered into this undertaking for
the establishment of an independent telephone system for
purposes of individual profit irrespective of any relation
they might assume as directors of such corporation or
corporations as might be contemplated by Mr. Finucane
and Mr. Page as necessary or appropriate agencies in
carrying out the scheme, these two gentlemen and Fenn,
the common agent, being largely trusted to devise and
carry out the details of the enterprise.    Messrs. Sibley,
Strong, Eastman and Watson, as their own testimony
indicated, were quite indifferent as to the methods to be
pursued; they confided in the others and contributed their

money liberally, apparently convinced that the investment would yield large returns.

If Fenn was the agent of these defendants as members of such syndicate his acts in furtherance of the enterprise and all that he did in reference to the prospectus must be deemed binding upon them. The promoter of a company, whether he be a director or not, who knowingly issues or sanctions the circulation of a false prospectus containing untrue statements of material facts naturally tending to mislead and to induce the public to purchase its stock or other securities is unquestionably responsible to those who are injured thereby. (*Morgan* v. *Skiddy,* 62 N. Y. 319.) Where there are a number of such promoters all the co-adventurers are liable in damages for the fraud of an agent employed by them to effect the sale of the corporate securities without reference to their own moral guilt or innocence. (*Hornblower* v. *Crandall,* 7 Mo. App. 220; affd., 78 Mo. 581.) In the case cited it was said that where an associate in such an enterprise abstains from knowing and leaves the details to his companions while the illicit gains go to the common accounts his ignorance ought not to avail him. "The law would be helpless if its obligations could be avoided by this convenient ignorance. Where the parties sought to be charged might have known and where it can fairly be inferred that they with the wrongdoers received the benefit of the contrivance, their ignorance cannot avail them."

The appellants, however, contend that Fenn, instead of acting for the individual members of the syndicate, was solely the agent of the United States Independent Telephone Company, and this being so that they cannot be held liable for his fraudulent misrepresentations inasmuch as they were merely directors of that corporation. They invoke the doctrine that the mere fact of being a director is not *per se* sufficient to render a party liable for the fraud and misrepresentation of the active managers of a

corporation or the fraudulent representations of an agent employed to market its stock. (*Arthur* v. *Griswold*, 55 N. Y. 400.) This contention is the foundation of the first legal proposition argued in their behalf, namely, that it was error to refuse to charge the jury that " if Mr. Fenn was selling bonds for the United States Independent Telephone Company and not for the syndicate then he was not the agent of the individual directors of the company and they in that relation only would be liable for personal misconduct."

The answer to this proposition is that the rule thus limiting the liability of directors of a corporation to cases where they are chargeable with some personal knowledge of the act claimed to be fraudulent has no application here because the evidence did not permit an inference that Fenn in issuing the prospectus was the agent of the United States Independent Telephone Company rather than the agent of the appellants as members of the syndicate. Upon all the proof in the case as it stood at the end of the trial the jury would not have been justified in making the desired distinction between the acts of the appellants as directors of that company and their acts as individuals. As has already been suggested, their own testimony showed that they were promoters — and that whatever functions they assumed, whether as directors or otherwise, were in furtherance of a common enterprise to market the securities of such corporations as might be formed to introduce and operate an independent telephone system in New York.

The appellants complain of four alleged errors in submitting to the jury questions as to the truth or falsity of statements contained in the prospectus:

(1) It is contended that it was error to leave to the jury any question respecting the statements of the prospectus relating to the New York Independent Telephone Company. This was one of the corporations in which the United States Independent Telephone Company had

acquired a majority of the stock, and it was the franchise of this corporation which was held out as the basis of the entire independent telephone scheme. "This company," said the prospectus, "is incorporated under the Laws of the State of New York with an authorized capital of $50,000,000. It owns a franchise in the city of New York acquired under the advice of eminent counsel, under which it is its purpose to begin as soon as practicable and in the near future the construction of an independent telephone system in that city." This so-called franchise had undergone several transfers. It was originally granted in 1894 by the board of electrical control in the city of New York to a corporation known as the Mercantile Electric Company, and the only business which had ever been done thereunder was the maintenance and operation of a burglar alarm system in a portion of the financial district about Wall street. In 1905 the Mercantile Electric Company was merged with the New York Independent Telephone Company, which acquired all of its capital stock, amounting at par to $5,000. This stock had been purchased by the promoters for $250,000 and by them turned over to the New York Independent Telephone Company for $41,000,000 of its stock. At the time when the prospectus was prepared and published no permit had been granted by the municipal authorities to the Mercantile Electric Company or its corporate successors in interest for any extension of its lines, and they could not lawfully be extended without such permit. Legal advice of capable counsel had been taken by the promoters as to the validity and sufficiency of the alleged franchise, and the opinions obtained from them, which appear in the record, show that the question was at least doubtful. Their attention had been expressly called to a recent decision by the Appellate Division in the first department holding that before a franchise became effective for any purpose the consent of the common council of the municipality must first be obtained. (*West Side Elec-*

*tric Co.* v. *Consolidated Telegragph & El. S. Co.*, 110 App. Div. 171.) The representation in the prospectus was unequivocal. It plainly imported the ownership of a franchise which could be exercised without encountering any legal obstacle whatever. The New York Independent Telephone Company did not own such a franchise, and the authors of the prospectus are chargeable with knowledge that such was the fact. Where a prospectus is circulated as an inducement to take stock in a corporate enterprise the language of the prospectus is to be interpreted by the effect which it would produce upon an ordinary mind. (*Wiser* v. *Lawler*, 189 U. S. 260, 261.) The same case is authority for the proposition that in estimating the probability of subscribers being misled by a prospectus the court may take into consideration not only the facts stated therein but the facts suppressed. In *Hayward* v. *Leeson* (176 Mass. 310) it was held that the promoters of a corporation were guilty of a fraud in issuing a prospectus to the public inviting subscriptions to the stock without disclosing the fact that they had caused to be issued to themselves for their services as promoters one-third of the whole capital stock by way of remuneration. Here it is obvious that if the facts which have been stated in regard to the limited use to which the franchise had been put by the original grantees for burglar alarm purposes only had been set forth in the prospectus, together with the discrepancy between the cost of the franchise to the promoters and the amount of stock issued therefor, no careful investor would have been induced to put any money into bonds based on such a foundation.

(2) The prospectus stated that "413,030 shares of the capital stock of the U. S. Independent Telephone Company have been issued or are contracted to be issued." The appellants insist that it was error to submit to the jury the question whether this statement was fraudulent or not. There was abundant evidence to make this an issue for the jury. The statement conveyed the idea that the stock had

been issued or contracted to be issued for money or property its equivalent in value. Of course the so-called franchise is to be included in the property; but the disparity between the $250,000 at which the franchise was purchased from the Mercantile Electric Company and the $41,000,000 of stock which the New York Independent Telephone Company issued on account thereof was so great as of itself to warrant an inference of fraud. (See *Boynton* v. *Andrews*, 63 N. Y. 93.)

(3) There is no sufficient foundation for the complaint that it was error to allow the jury to pass upon the character of the representations in the prospectus with reference to the amount of dividends paid by the Stromberg-Carlson Telephone Manufacturing Company. A declaration that dividends have been paid imports that they have been earned, and the testimony of Mr. Finucane, the treasurer and general manager, showed clearly that these dividends or some of them had not been earned in fact.

(4) In speaking of the bonds which it was the purpose of the prospectus to induce the public to buy the prospectus contained a statement that $17,000,000 were to be issued immediately and the balance of $8,000,000 were to be held in escrow by the trustees. It continued: "Such $17,000,000 of bonds are to be issued pursuant to contracts already made by the Company and binding on it, and as a result of the performance of said contracts the Company will have $5,000,000 cash in its treasury in addition to the securities pledged under the mortgage." The truth or falsity of this statement depends on what it means. The appellants contend that it does not mean to convey the idea that contracts had already been made which obligated anybody to purchase the bonds but only that contracts had been made binding the company to sell. On the other hand, the respondent insists that it plainly implies the existence of bilateral contracts enforceable at the instance of the corporation and, therefore, practically

certain to insure the receipt of $5,000,000 in cash by the treasury. In answer to a specific question on this branch of the case the jury found that the language of this part of the prospectus fairly meant that contracts had been made which were mutually binding upon both parties and when performed the company would have $5,000,000 in the treasury; and in answer to another question they found further that the prospectus was falsely worded so as to represent that the contract for the sale of the bonds was bilateral when the contract with Mr. Fenn did not bind him to take the bonds. The evidence amply warranted these findings. Speaking of an equivocal prospectus which was condemned as fraudulent by the House of Lords in *Aaron's Reefs* v. *Twiss* (L. R. [App. Cas. 1896], 273, 285) Lord HALSBURY calls the language ambidextrous; and this expression aptly characterizes that in the present case. In the case cited it was argued, as it is suggested here, that there was no specific allegation of fact which is proved to be false; but the lord chancellor protested against this being regarded as the true test and declared that the question was whether taking the whole thing together was there a false representation. "I do not care by what means it is conveyed — by what trick or device or ambiguous language; all those are expedients by which fraudulent people seem to think they can escape from the real substance of the transaction. If by a number of statements you intentionally give a false impression and induce a person to act upon it, it is not the less false although if one takes each statement by itself there may be a difficulty in showing that any specific statement is untrue." The general reader would almost inevitably infer from this assertion in the prospectus that the United States Independent Telephone Company was a party to contracts with solvent purchasers which would enable it within a reasonable time to realize $5,000,000 in cash, and the proof shows that nothing could have been further from the truth.

The prospectus was prepared by Mr. Page and issued by Fenn, who conducted the sale of the bonds thereunder. Fenn died before the trial and the defendants did not call Mr. Page as a witness. Nevertheless it is argued in their behalf that it was essential for the plaintiff to show fraudulent conduct on the part of these persons and that his failure to do so was fatal to the plaintiff's cause of action. It is enough to say as to this proposition that a fraudulent intent on the part of the author and publisher of the prospectus may be inferred from the falsity of the statements therein contained and that alone. (See *Meyer* v. *Amidon*, 23 Hun, 553.)

Our attention is called to some alleged errors in rulings on evidence, but we think that such rulings as were incorrect were harmless. The five defendants claimed to be entitled to six peremptory challenges each, but the court allowed only six peremptory challenges in all, treating the defendants collectively as but one party, within the meaning of section 1176 of the Code of Civil Procedure, which provides that upon a trial of an issue of fact joined in a civil action in a court of record each party may peremptorily challenge not more than six. The question does not appear to have been considered in any reported case in this state. Numerous authorities from other states are cited in the briefs of counsel, but they are only relevant where statutes exist similar in phraseology to our own, that is to say, where a given number of peremptory challenges is allowed to *each* party. Such is the statute in Illinois in force since the year 1827, and "during that time it has been general practice and so understood by the entire profession that each side to the case without reference to the number of persons in each in all civil cases have but three peremptory challenges." (*Schmidt* v. *C. & N. W. R. Co.*, 83 Ill. 405.) The appellants rely upon *Hundhausen* v. *Atkins* (36 Wis. 518), where the court was called upon to construe a statute regulating peremptory challenges which provided

that in civil causes each party should be entitled to three. The defendants had appeared by different attorneys and severed their defenses, and the court held that inasmuch as their defenses were essentially different and each had a distinct issue to maintain, each was to be considered a party within the meaning of the statute. The court, however, added this qualification: "Undoubtedly when several defendants in a civil action join in their defense, or severing in their answers set out but one defense common to them all, they constitute one party limited to the statutory number of challenges given to a party as ruled in this case in the court below. In such a case they might and perhaps ought to join in one answer setting up a common defense; and they should not be permitted to gain additional challenges by the mere act of severing in their pleadings. They have a community of interests and should be left to à community of challenges." Such is the case here. The defendants had a common interest; their answers were substantially identical; and the defense was conducted in the common interest of all. Under the circumstances, whatever might be the rule if different defenses, possibly antagonistic to one another, had been interposed, the defendants were properly treated as only one party within the meaning of section 1176 of the Code.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., HAIGHT, VANN and CHASE, JJ., concur; HISCOCK, J., dissents because of error committed by the court in refusing to charge as requested by the defendants that "if Mr. Fenn was selling the bonds for the United States Independent Telephone Company and not for the Syndicate then he was not the agent of the individual directors of the Company, and they, in that relation, only would be liable for personal conduct." WERNER, J., not sitting.

Judgment affirmed.