OTTMANN v. BLAUGAS CO. OF CUBA et al.

(Supreme Court, Appellate Division, First Department.   February 11, 1916.)

CORPORATIONS ⟵306—LIABILITY OF DIRECTORS—FRAUD.

Where the board of directors of a corporation authorized an executive committee, composed of some of their members, to act for it during a certain period, the directors who were not members of the executive committee were not personally liable for the fraudulent act of the executive committee in issuing a false prospectus and collecting money for sales of stock, of which acts they had no knowledge.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1457, 1458; Dec. Dig. ⟵306.]

Page and Dowling, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Phillip Ottmann against the Blaugas Company of Cuba and others.   From a judgment for plaintiff, defendants appeal.   Reversed as to some defendants, and dismissed, and as to others affirmed.

Argued before CLARKE, P. J., and SCOTT, DOWLING, SMITH, and PAGE, JJ.

Charles E. Travis, of New York City, for appellants Blaugas Co. and others.

Charles De Witt Rogers, of New York City, for appellant Cushman.

George J. Kilgen, of New York City, for appellant Strauss.

L. Barton Case, of New York City, for appellants Grimes and Dunn.

H. Schieffelin Sayers, of New York City, for respondent.

SCOTT, J.   In my opinion the evidence failed to establish liability on the part of these directors who were not members of the executive committee, and who are not shown to have had any knowledge of or any hand in preparing the so-called booklet containing the false statements which constitute the basis of this action.   They were not members of a syndicate of promoters seeking to sell stock for their individual benefit as were the defendants in Downey v. Finucane, 205 N. Y. 251, 98 N. E. 391, 40 L. R. A. (N. S.) 307, and Lehman-Charley v. Bartlett, 202 N. Y. 524, 95 N. E. 1125, but simply directors of a corporation which employed an agent to sell stock for the benefit of the corporation.   What interest such directors had in the corporation, or to what extent they would be benefited by its successful flotation, does not appear.   As to these directors the rule is applicable which is clearly stated in Arthur v. Griswold, 55 N. Y. 400, and Rives v. Bartlett, 215 N. Y. 33, 109 N. E. 83, and recognized in Downey v. Finucane, supra.   In Rives v. Bartlett this court applied the Finucane Case to a state of facts which upon the record much resembled the facts shown by the present record.   The Court of Appeals said:

"The doctrine of the Finucane Case has no application to the facts of this case.   In that case the defendants were held liable for the acts of Fenn, not on the ground that he was a codirector, but because they had constituted him as agent of a syndicate organized for their personal profit, and because he acted as agent of the syndicate, and not as agent of the corporation.   In this

case there is nothing upon which to base a claim that Bartlett was the agent of the appellants, except the bare fact that he was a codirector, and that is not sufficient."

In my opinion this exactly expresses the position of the defendants who were directors of the company, but not members of the executive committee, and therefore as to these defendants the judgment should be reversed, with costs, and the complaint dismissed, with costs, and in other respects modified, in accordance with the opinion of Mr. Justice PAGE, and, as so modified, affirmed, with costs as against the remaining defendants. Settle order on notice.

CLARKE, P. J., and SMITH, J., concur.

PAGE, J. (dissenting). This is an action for rescission of a sale of stock, upon the ground that the purchase thereof was induced by fraudulent representations. The Blaugas Company of Cuba was incorporated in November, 1911, under the laws of Delaware, for the purpose of the manufacture and sale in the island of Cuba and other West Indian islands, of a liquified illuminating and fuel gas known as "Blaugas." The individual defendants were the directors and officers of the company at all the times hereinafter mentioned. The board of directors met for organization on December 12, 1911, and appointed an executive committee of five of their members, to which were given by the by-laws all the powers of the board of directors between meetings. The directors did not meet until February, 1912, when they elected a chairman and transacted no other business. No other meeting was held until November, 1912, when the newly elected directors met for organization and the election of officers, and the same executive committee was continued. It would thus appear that all the powers of the directors had, to all intents and purposes, been delegated to the executive committee. This committee prepared and issued, for the purpose of securing purchasers for its stock, a booklet or prospectus containing a full list of the officers and directors of the company. This booklet contained the following statement:

"Our Plant.—The Blaugas Company of Cuba is erecting its plant on water front property on Havana Harbor, where it can receive its gas oil direct from any seaport refinery by tank steamer and pump same into its own storage tanks from which it will be drawn by gravity into the works avoiding all handling, and costing less than one-third of a cent per gallon for transportation."

At the end of the booklet a map of Havana Harbor was printed, showing a large tract which was designated "Blaugas works." In March, 1912, another prospectus, containing the names of the officers and directors, was issued for the purpose of securing subscriptions to $500,000 of the preferred stock of the company. This prospectus stated the purpose of the present issue of stock—

"is for the purchase of land, construction and equipment of buildings, and also to provide a working capital. The actual expenses to be incurred for the erection of our plant in Havana Harbor are estimated as follows: * * * The company proposes, after the Havana works are completed, to start immediately the erection of works on water front property at Santiago, Manzanillo,

and Cienfuegos on the south shore of Cuba and two additional plants on the north shore. These plants will not be as extensive as the Havana plant. * * *"

Further on in this prospectus is the statement of the capacity of the Havana plant and a detailed statement of estimated costs of production, showing net earnings "equivalent to the required 7 per cent. dividend on outstanding preferred stock and 50 per cent. on the common." An agent was duly employed to sell this stock, and called upon Louis Ottmann, a son of the plaintiff, who had full power to act for the plaintiff, and delivered to him the first booklet and exhibited to him the March, 1912, prospectus. Relying upon the before recited representations as to the Havana plant of the company, in good faith and in ignorance of the real facts, he paid $12,000, and received in return therefor 1,200 shares of preferred stock and 600 shares of the common stock. In fact, the company had no property located on Havana Harbor, nor was it erecting any plant at that place.

It is contended that the president of the company had an option on some property at the location shown on the map, which the company never exercised. This, however, is no justification for the positive statements contained in the booklet and prospectus. There is ample evidence to sustain the findings of fact of the learned trial justice.

It is contended, however, that the tender of the stock was not sufficient, upon the very peculiar theory that, as it transpired upon the trial, as Louis Ottmann had received a secret commission from the defendant's agent for consummating the sale, the plaintiff was required to tender back this secret commission. The giving of such a commission to an agent to influence his action in the discharge of his duty to his principal is a misdemeanor. Pen. Law (Consol. Laws, c. 40) § 439. It is certainly a novel proposition that the principal is required to tender back that which was given to his agent for the purpose of influencing the agent to act contrary to the principal's interest. If the principal desires to ratify the act, he may recover from the agent the secret profit that the agent has received. Dutton v. Wellner, 52 N. Y. 312. There is, however, no obligation on his part to recover such commission for the benefit of the misdemeanant. No such contention was made in the trial court, and tender on February 27, 1913, was specifically admitted at the trial.

It is contended that the plaintiff's right to rescind has become barred by its own laches in failing to assert such right within a reasonable time. As a basis for this it is claimed that a letter addressed to the stockholders was sent to plaintiff, which stated that a delegation of the board of directors had just returned from a visit to Cuba, where they had selected a site for the first plant at Matanzas, and that they had abandoned, by advice of counsel, the option they held on a Havana water front property. Even if this letter had been received by the plaintiff on or about the day of its date (September 12, 1912), a delay of five months before the tender of the stock was made I do not think would constitute laches. The learned trial justice refused to find that this letter was received by the plaintiff. In this he is justified by the evidence. Plaintiff denied that he had ever received or seen the letter,

and stated that he did not learn of the falsity of the representation until December, 1912, and within two weeks thereafter he retained his present attorney to advise him of, and enforce, his rights in this transaction. There appears to have been a somewhat voluminous correspondence in relation to the matter between the attorney and some of the defendants, reference to which was made during the trial, but it was not offered in evidence.

On February 27, 1913, the tender of the stock and a demand for the return of the money paid therefor were made. While it is true, as shown by the cases cited by appellant, that a right to rescind a contract must be exercised immediately upon the discovery of the fraud, even in such a case a party, on being informed of the fraud, has time within which to make inquiry to ascertain the facts and to consult counsel. He is not required to proceed precipitantly without full knowledge. He does not owe any "duty of active vigilance in discovering the fraud and taking prompt steps to rescind the contract." Slayback v. Raymond, 93 App. Div. 326, 333, 87 N. Y. Supp. 931, 936; Baker v. Lever, 67 N. Y. 304, 23 Am. Rep. 117. The rule that applies to the rescission of a sale, upon the ground of fraud, is that the party must act promptly—that is, within a reasonable time—upon discovering the fraud. He cannot lie by and speculate as to the advantage or disadvantage of a rescission, or an affirmance of the transaction, so long that the other party would be justified in the belief that notwithstanding the fraud he elected to retain the thing sold and thereby led to act upon that supposition.

Whether the party has lost his right to rescind by laches depends upon the circumstances of each case. In the instant case the plaintiff has performed no act inconsistent with his right to rescind, nor does it appear that the defendants were prejudiced by the delay. Even if the letter of September 12th had been received, that letter stated that they had selected a site at Matanzas and had abandoned the Havana site. It speaks of accomplished facts, not of intended action. The first payment on the Matanzas property was not made until February, 1913; whether prior to the tender does not appear, but certainly subsequent to the correspondence which had informed the defendant of plaintiff's attitude. The Matanzas plant was not completed at the date of the trial, April, 1915. None of the steps taken by the defendants to acquire or erect the Matanzas plant can be said to have been taken in reliance upon a supposition that plaintiff had intended to affirm the sale of the stock.

The judgment against the company was amply justified by the evidence. Nor can any of the directors escape liability. The false representations were set forth in booklet and prospectus, containing their names and issued, not alone on their apparent authority, but by the executive committee, which they had duly authorized to act for them. Therefore this is not the case of a director being held liable for the fraudulent act of a codirector (Rives v. Bartlett, 215 N. Y. 33, 109 N. E. 83), but rather the holding of those embarked in a common enterprise, who are held liable for the fraudulent act of their authorized agents (Downey v. Finucane, 205 N. Y. 251, 98 N. E. 391, 40

L. R. A. (N. S.) 307; Lehman-Charley v. Bartlett, 135 App. Div. 674, 120 N. Y. Supp. 501, affirmed 202 N. Y. 524, 95 N. E. 1125; Mack v. Latta, 176 N. Y. 525, 71 N. E. 97, 67 L. R. A. 126). Through an evident inadvertence, as our attention was not called to the fact by any of the counsel, the decision does not recite the answer of the defendant Blaugas Company of Cuba, and the name of that defendant is omitted from the sixth and ninth findings of fact and the second subdivision of the fourth conclusion of law. These deficiencies of the findings of fact should be corrected by amendment. The fourth conclusion of law should be amended by inserting in subdivision 2, between the words "defendants" and "Louis H. Holloway" the words "Blaugas Company of Cuba" and by striking from said second subdivision all the words commencing "with an extra allowance" to the end of the said subdivision, and inserting a third subdivision as follows:

(3) That the plaintiff have execution on said judgment against all of said defendants, the sheriff to be required to satisfy the said judgment first out of personal and real property of the defendant corporation, and, if sufficient property of the defendant corporation cannot be found to satisfy the same, then out of the property of the defendants Holloway, Dunn, Sulzberger, Heely, Cushman, Coe, Grimes, O'Neill, Strauss, and Buchan.

The present third subdivision should be numbered (4). The judgment should be modified, to conform to the amended conclusions of law, and contain a further provision that the amount of the recovery therein to wit, $14,192.47, shall have interest as from the date of the original entry thereof; and, as modified, the judgment should be affirmed, with costs to the respondent.

DOWLING, J., concurs.