OPINION OF THE COURT
Michael J. Dontzin, J.
Plaintiff moves pursuant to CPLR 4109[1] to limit to six the number of peremptory challenges allotted all the defendants, on the grounds that defendants’ interests are shared among two groups that have a unity of interest, and *828 that to permit more than the six peremptory challenges would make the jury selection process unduly lengthy, burdensome and unequitable. Defendants, 21 in number, claim that each is entitled to three challenges under the statute, but at a minimum, that there are eight groups which have a unity of interests, each having separate counsel, and therefore defendants should have a total of 24 peremptory challenges. The legal issue presented here has not been addressed since the enactment of the current statute (1972).
The underlying action is to recover the balance of legal fees and disbursements, in the amount of $312,462.41, claimed due and owing to plaintiff. The facts involved are hotly contested. However, for the purposes of this proceeding it would be sufficient to observe that in 1977, the defendants (with the exception of defendant, Associated Builders and Owners of Greater New York, Inc. [ABO]), who were then in the building and construction of real estate industry, became involved as litigants in, or had an interest in a number of foreclosure proceedings of certain publicly financed residential properties in New York. ABO is a trade association composed of persons and entities in the building and construction or real estate industry.
It is claimed that defendants formed a committee under the auspices of ABO, which appointed defendants William Condren (Condren) and John Knapp (Knapp) to conduct a talent search to retain counsel to represent defendants interested in these foreclosure actions. That after interviewing several law firms, plaintiff was retained, and did undertake the defense in these foreclosure actions at its customary rates. That the total charge for professional services was $513,816.79, of which $201,354.38 were paid, leaving the balance of $312,462.41.
In support of this motion, plaintiff argues that there are only two groups among all the defendants that have a unity of interest, i.e., — “Agents” (Condren and Knapp) and “The Committee” (the remaining 19 defendants). Plaintiff further argues, that the “Agents” only interest is to demonstrate that Condren and Knapp were duly authorized agents of a disclosed principal and therefore not personally liable to plaintiff; and that the “Committee’s” only *829 interest is to show that Condren and Knapp were not the Committee’s Agents and could not bind it to pay plaintiff’s legal fees.
While CPLR 4109 does not spell out hoc verba that where there are several parties to a lawsuit on one side, they may be considered to be a “single party” where there is a unity of interest, a fair and logical construction of the statute leads to that interpretation. Otherwise, in lawsuits such as this, defendants would be entitled to 63 challenges, to say nothing of the number of challenges that the court, in the fair exercise of discretion would have to grant to plaintiff. Indeed, it appears that it is customary under our New York statute to define multiple parties on one side as a single party, where they have common or a unity of interests. (See 4 Weinstein-Korn-Miller, NY Civ Prac, par 4109.05, p 41-158; Downey v Finucane, 205 NY 251, 253.) The holding in Downey should be followed here notwithstanding that it was applicable to a predecessor statute to CPLR 4109. It should be further noted that the view expressed here is in conformity with the majority view of jurisdictions whose statutes allow a specific number of peremptory challenges to “each party” (see Ann., 32 ALR3d 747, 755). Similarly, it is in harmony with the Federal statute (US Code, tit 28, § 1870), where under appropriate conditions and in the proper exercise of discretion the Trial Judge can grant or refuse additional peremptory challenges (see Doralee Estates v Cities Serv. Oil Co., 569 F2d 716, 723; Carr v Watts, 597 F2d 830, 832).
Absent a showing of prejudice, which has not been demonstrated here, the so-called single party rule clearly is desirable from the standpoint of practicality, convenience, and fair use of judicial resources, not to say, of course, time. Moreover, this rule more readily helps to insure the selection of a fair jury. To allow one side having multiple parties to have more than a single party quota of challenges could very readily result in giving a windfall to that side. Because, in addition to eliminating those prospective jurors who would normally be challenged in a single party case, the coparties in a multiple party case could challenge as many additional prospective jurors as the arithmetic allotment permits. (See The Right of Peremptory Challenge, 24 U of Chi L Rev 751, 753-755; 4 Weinstein-Korn-Miller, par 4109.05, pp 41-157-41-158.)
*830 While multiple parties who have a unity of interests are to be considered as a single party for the purposes here, if the interests of the parties are essentially different, hostile or antagonistic, then each litigant is ordinarily deemed a party within the meaning of the statute and entitled to the full number of peremptory challenges allowed. (50 CJS, Juries, § 281, p 1072; Lane v Fenn, 65 Misc 336, affd 146 App Div 205; see, also, Heiston v Taylor, 281 App Div 800.)
In the instant case the question presented therefore is whether the interests and defenses of all 21 defendants are diverse, hostile or antagonistic.
Defendants base their hostility, antagonism and divergence of interest on their having cross-claimed against each other; each denying liability for the legal fees, but claiming the other defendants are responsible for retaining plaintiffs and therefore should be liable for the legal fees.
Generally, cross claims are given considerable weight in determining whether the interests of the parties are antagonistic. However, the cross claim itself, or conclusory statements contained therein are insufficient to demonstrate antagonistic interests. The cross claim must contain evidentiary facts of antagonistic interests or at least raise an issue of fact in this regard. Cross claims that fail to do so indicate a commonality of interest. (See, generally, Ann., 32 ALR3d 747, 753, and case therein.)
The papers before the court reveal that only some of the defendants have raised viable issues of fact, while others have failed to do so. Indeed some of the defendants have failed to file cross claims, some have failed to respond to plaintiff’s motion and of those that did, some have adopted the same position of their codefendants.
There appears to be little to support defendant’s contention that there is at least eight distinct groups among the defendants that have antagonistic interests.[2] Having eight *831 different lawyers, some of whom at one time or another represented defendants who now claim antagonistic interests, filing of cross claims or merely claiming antagonistic interests, are insufficient in and of themselves to support defendant’s contention. It is also of some importance to note, that there has been no discovery among the cross claimants and that by far, the major portion, if not practically all the discovery of plaintiff was conducted by the attorneys for one of the groups enumerated in footnote No. 2. Apparently all of the defendants were content to let one law firm carry the ball for all of them. This is hardly a situation that would exist if their interests were as antagonistic as they now claim.
Only the Diamond (II), Frawley (III), Condren (IV) and Knapp (V) groups have raised issues of fact sufficient to support their contention that there is hostility among and between them so as to be considered as being entitled to separate peremptory challenges.[3] However, Condren and Knapp have each adopted the same position (same answers and counterclaims) and should for purposes of exercising peremptory challenges be considered to be one unit.
Accordingly Diamond (II) and Frawley (III) are each granted three peremptory challenges; Condren (IV) and Knapp (V) together are granted three peremptory challenges; and “ABO” (I), Kinney (VI), DeMatteis (VII) and Sovereign (VIII) all together as a single unit are granted three peremptory challenges. The defendants are directed to use the challenges allotted to each unit with total *832 independence and without consultation. Inasmuch as defendants have a total of 12 peremptory challenges among them, plaintiff’s peremptory challenges are increased from three to six.

. CPLR 4109 provides: “Each party shall have three peremptory challenges plus one peremptory challenge for each alternate juror. Where there are more parties on one side than on the other, the court may, before the examination of jurors begins, grant additional challenges to the side with the smaller number of challenges.”

. Group I — is composed of Associated Builders and Owners (ABO).
Group II — is composed of Aaron Diamond (deceased since this action began and represented now by Executors of his Estate), Prominade Associates, The Prominade Apts., Inc., Sprain Construction, Inc. and Dubor Associates (Diamond).
Group III — is composed of Frawley Piazza Associates, Francis Phelan, Walter C. Goldstein, Joseph DePaola, Maurice S. Paprin, Patsy Casitore, Joseph Insalaco, Dic-Underhill Constr. Co. and Douglass Urban Corp. (Frawley).
Group IV — is William J. Condren (Condren).
Group V — is John T. Knapp (Knapp).
*831 Group VI — is the National Kinney Corp. (Kinney).
Group VII — is Leon D. DeMatteis Construction Corp. (DeMatteis).
Group VIII — is Sovereign Construction Co. (Sovereign).

. Diamond (II) which has cross-claimed against all the other defendants, claims that it was prepared, through its own general counsel, to settle the foreclosure action in which it alone was involved. That it was prevailed upon by the others to not settle, but join together to retain a single law firm to represent everybody’s interests with the understanding that ABO would collect contributions from all the participants to pay for the legal fees incurred.
Frawley (III), which has cross-claimed against ABO (I), Diamond (II), Condren (IV), and Knapp (V), claims that it had no interest in two of the foreclosure proceedings which concerned only Diamond (I) and that it was prevailed upon to join with the other defendants to establish a war chest (collected by ABO) to hire a law firm to represent all the defendants involved, so as to better protect their interests, and that the legal fees would be paid from the moneys collected.
Condren (IV) and Knapp (V) in essence both claim that ABO (I) knew that plaintiffs were furnishing legal fees on behalf of all the other defendants and that they, Condren and Knapp, were not personally liable.