(156 App. Div. 552.)

## RIVES v. BARTLETT et al.

(Supreme Court, Appellate Division, First Department. May .9, 1913.)

1. CORPORATIONS (§ 317*)—DIRECTORS—LIABILITY.
  Directors, who organize a corporation, knowing that attempts are be-ing made to induce subscriptions to its capital, are liable for misrepre-sentations contained in circulars and other appeals issued to the public, and cannot escape such liability by claiming ignorance of the same.
  [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1401–1414; Dec. Dig. § 317.*]

2. CORPORATIONS (§ 320*)—DIRECTORS—LIABILITY.
  In an action by a subscriber to the capital stock of a corporation against the directors of the company for misrepresentations contained in a circular, evidence *held* to sustain a finding that defendant directors authorized the issuance and distribution of the circular which contained such representations, with the intent of inviting subscriptions.
  [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. § 320.*]

  Hotchkiss and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Gustave Rives against John R. Bartlett and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, DOWLING, and HOTCHKISS, JJ.

William G. Peckham, of New York City (Eugene Frayer, of New York City, of counsel), for appellants De Selding.

Kendall & Herzog, of New York City (Paul M. Herzog, of New York City, of counsel), for appellant Hill.

Charles S. Aronstam, of New York City, for respondent.

INGRAHAM, P. J. The defendant the Reed Duane Cold Storage Company, a corporation organized under the laws of this state, issued a circular, signed by its president, defendant Bartlett, to secure the in-vestment of money in the preferred stock of the company; the com-pany offering to give an equal amount of paid-up common stock as a bonus. A copy of that circular was sent to the plaintiff, who resided in Paris, and was by profession an architect, by the president of the corporation, Bartlett. By a letter accompanying this circular Bartlett offered to the plaintiff the privilege to subscribe $5,000 or $10,000 or more for himself · and friends named in the circular, and personally guaranteed the plaintiff against any loss whatever. Relying upon this circular, the plaintiff subscribed for $5,000 of the preferred stock of the corporation, and on September 29, 1906, transmitted $5,000 to Bartlett, which he used for the purposes of the corporation. At the same time the plaintiff procured one Lehman-Charley, also residing in Paris, to subscribe $20,000 for the preferred stock of this company, and that amount was also transmitted to Bartlett, and by him applied to the use of the corporation.

An action was commenced by Lehman-Charley against the defend-ants in this action to rescind that subscription of $20,000 to the pre-

ferred stock of the corporation and to recover the amount paid, on the ground that the circular contained fraudulent, untrue statements, upon which the plaintiff relied in making the subscription to the preferred stock. All of the individual defendants in this present action were defendants in the former action, except the defendant Hill, who was named as a defendant, but not served with process. That action resulted in a judgment for the plaintiff, the subscription was rescinded, and judgment for the amount of the subscription was rendered against all the defendants before the court. On appeal to this court that judgment was affirmed (135 App. Div. 674, 120 N. Y. Supp. 501), and was also affirmed in the Court of Appeals (202 N. Y. 524, 95 N. E. 1125). The facts upon which that action was based appear in the opinion written in that case, and it is not necessary to restate them.

Generally speaking, it may be said that this circular was false and fraudulent, that it contained untrue statements of material facts, the natural tendency of which was to deceive and mislead the public and induce it to purchase the stock, and that defendants Bartlett, De Selding, and Tubby were responsible for the issuance of the circular, and responsible to the plaintiff for the amount paid by the plaintiff, relying on the circular, for the preferred stock of the corporation. All of the questions presented in this case were determined by that case, except the question as to whether the defendants De Selding, Tubby, and Hill were responsible for the issuance of the circular; it being claimed in this case that the evidence is substantially different as to the connection of these individual defendants with the issuance of the circular and their responsibility for its fraudulent character. The only question, therefore, that I will discuss, is the connection of these appellants with the issuance of the circular and the use of it to procure subscriptions by the public generally, and by this plaintiff particularly, to the stock of the corporation.

This corporation was incorporated June 8, 1906, and on June 21, 1906, the incorporators met for the purpose of organizing the corporation. By-laws were adopted, and a resolution was also adopted offering to purchase from John R. Bartlett, not one of the incorporators, all of his right, title, and interest to certain property in the city of New York for a consideration of $1,575,000—$75,000 in fully paid, nonassessable preferred stock at par, $1,500,000 in fully paid, nonassessable common stock at par. Bartlett's only interest in this property was a contract to purchase it, subject to mortgages, on which $25,000 appears to have been paid; the price stated in the contract being $550,000. The defendant De Selding was one of the incorporators, but neither of the other defendants were incorporators. De Selding was elected treasurer. A contract was then made between the corporation and Tubby, who was to render services as an architect. On the same day was held the first meeting of the board of directors of this corporation, at which the purchase of Bartlett's interest in the property was ratified and approved, and the officers of the corporation authorized to issue the stock provided therefor. Peck, one of the incorporators, who had been elected president, then resigned, and Bartlett was elected director and president in his place. One Gaines then resigned as director, and Hill was elected in his place. De Selding

9

resigned as treasurer, and Bartlett was elected in his place. On July 16, 1906, another meeting of these directors was held, when Taylor resigned as director, and Tubby was elected in his place. On September 5, 1906, another meeting of the directors was held, which is described in the minutes as an adjourned meeting of August 31, 1906. At that meeting the contract with defendant Tubby was approved, and a contract with defendant Hill, who was described as a cold storage expert, was accepted and approved. De Selding was a real estate broker, and he had charge of the property, which was to be purchased, and acted as broker in the purchase of the property.

The organization then being completed—Bartlett, the president, having all the shares of stock which had been issued to him in exchange for the transfer of his contract to purchase the property for $550,000, of which $25,000 had been paid; De Selding, the agent of the property; Tubby, the architect, having the contract for the erection of the buildings on the property; and, Hill, the cold storage expert, having the contract for the payment for services rendered, being directors— all that was needed was money with which to carry into effect the object for which the corporation had been formed. Bartlett seems to have been the directing spirit in the enterprise, assisted as he was by these defendants, who were directors in the company, and who furnished to him such information and technical advice and assistance as was necessary to carry the scheme into effect. The scheme was to erect upon this property, which had been purchased, a cold storage warehouse, and, as is usual in transactions of this character, estimates of the profits that were to be secured to the corporation by the transaction of cold storage business and of the cost of the buildings to be erected prepared.

In May, 1906, a circular was prepared, containing a statement of the purpose of the corporation, description of the property to be procured and the building to be erected, an estimate of the cost of the building, with the incidental expenses to start the corporation in operation, and an estimate of the annual revenues to be received from the business after it was started. As I understand it, none of the defendants deny their share in the preparation of this May circular. The information contained in this circular was furnished to Bartlett by these three defendants, who are now appellants, and it was stated that the net cost of the property and the building to be erected upon it, and the expense of organizing the corporation, would be $1,850,000. Of this amount it was intended to raise $1,000,000 by a mortgage and $850,000 by the sale of preferred stock at par. The common stock was to be issued, and a part distributed to subscribers of the preferred stock as a bonus, and the remainder issued to Bartlett and his associates in payment for their interest in the property and their assistance in erecting the building and organizing and developing the business. The estimated annual revenue from all sources was $324,835, from which amount was to be deducted interest at 5 per cent. on the $1,000,000 mortgage and 6 per cent. on the $850,000 preferred stock, leaving a balance of $223,835 applicable for dividends on common stock. As all the common stock had been issued to Bartlett as the consideration for the transfer to the company of his contract to purchase the property, on which $25,000

had been paid, and which amounted to $1,500,000, it must have been contemplated that Bartlett was to contribute the amount of common stock which was to be distributed as a bonus to subscribers to the preferred stock.

Attention is called to the circular, to show the knowledge that these defendants appellants had as to the object of the corporation, and the nature of the statements as to expected costs, revenue, etc., which they had prepared and had authorized to be used to induce the public to subscribe to the preferred stock of this corporation. There was evidently a defect in this circular, which did not render it attractive to investors. Everything had to be purchased, and it was the money of the subscribers to the stock which was to provide all of the land and the building and the equipment, and on the face of this circular it was evident that the corporation at that time had nothing as a basis upon which it could appeal to any investor to join in the enterprise. It being evident that this circular did not result in the production of the desired subscriptions, some time in July, 1906, Bartlett set to work to revise this circular and to make it more attractive to persons with money. It appears that during the month of July, 1906, Bartlett and the others interested were engaged in the work of preparing a new circular. That circular appears to have been transmitted to plaintiff, and the statements therein contained induced him and Lehman-Charley, who was the plaintiff in the former action, to which attention has been called, to make the investments amounting to $25,000 in the preferred stock of the corporation, and it was this circular of August 1, 1906, that we held in the Lehman-Charley action to have been fraudulent. It contained the same statements as to the cost of the property, the estimated income, which showed a large amount of surplus applicable to the payment of dividends on the common stock. It contained the names of all of these defendants appellants as directors, and the names of De Selding Bros. as the agents of the property; one of the latter being the defendant De Selding. It also announced that the corporation had purchased this land, and contained other statements in relation to it, which were false and fraudulent, and upon which the plaintiff's subscription was secured.

In the trial of the Lehman-Charley action, the connection of the defendants with the circular of August 1, 1906, was proved by the testimony of Bartlett and one Thompson, who was the secretary of the corporation. In that trial, although the defendants Hill, Tubby, and De Selding were in court, they did not deny their share in the preparation of the circular and their knowledge of it before it was issued. On this trial substantially the same evidence was produced by the plaintiff. But, this court and the Court of Appeals having decided that the circular was false and fraudulent, and that its issue rendered the defendants, who had to do with it, liable to any subscriber to the preferred stock who had subscribed in reliance upon the statements contained therein, these defendants appellants became witnesses. They denied that they knew anything of its issue, or had ever authorized its issue. The only question on this appeal is whether there was evidence to sustain a finding that they did know of this circular, and the

purpose for which it was issued and used, prior to the time it was sent to the plaintiff.

[1] The rule as to the liability of directors of a corporation for false and fraudulent statements issued on behalf of the corporation to secure subscriptions to its stock is not now in doubt in this state. Directors, who organize a corporation of this character, knowing that attempts are being made to induce the public to subscribe to the corporation or to purchase its securities, have imposed upon them a duty that is not discharged by willfully shutting their eyes to the acts of other officers or agents of the company as to methods used to procure money from the public. They cannot authorize the issue of circulars and other appeals to the public to secure the benefit of subscriptions to be made to the corporation, of which they are officers and directors, and not be responsible for false and fraudulent statements by which investments in its securities are secured. In this case the directors knew that circulars were being issued in the name of the corporation, and upon their apparent authority, to secure subscriptions to the stock of the corporation. Necessarily the standing of such a corporation depends largely upon the character of its directors and officers. Whenever a corporation issues a circular of this kind, upon the faith of which subscriptions are asked, the public, receiving such circulars, are entitled to presume that the circulars are issued with the assent of the officers and directors of the corporation, and that they contain a true statement of the important facts with relation to the financial condition of the corporation. The directors cannot afterwards receive subscriptions, and apply the money so subscribed for the benefit of the corporation, without to some extent, at least, adopting the statements contained in the circular and other representations made by the responsible officers of the corporation to secure such subscriptions. I think this proposition is clearly recognized by Bartlett, J., in Downey v. Finucane, 205 N. Y. 251, 98 N. E. 391, 40 L. R. A. (N. S.) 307, where he says, in discussing such liability:

"The promoter of a company, whether he be a director or not, who knowingly issues or sanctions the circulation of a false prospectus containing untrue statements of material facts naturally tending to mislead, and to induce the public to purchase its stock or other securities, is unquestionably responsible to those who are injured thereby. Where there are a number of such promoters, all the coadventurers are liable in damages for the fraud of an agent employed by them to effect the sale of the corporate securities, without reference to their own moral guilt or innocence."

And he cited with approval Hornblower v. Crandall, 7 Mo. App. 220, affirmed 78 Mo. 581, and continued:

"The law would be helpless if its obligations could be avoided by this convenient ignorance. Where the parties sought to be charged might have known, and where it can be fairly inferred that they, with the wrongdoers, received the benefit of the contrivance, their ignorance cannot avail them."

[2] The question, the only question, on this appeal, is whether the evidence sustains the finding. Bartlett, the president of the company and the head and front of this enterprise, was examined as a witness on behalf of the plaintiff. He testified that he became acquainted

with the other defendants, who are appellants, some time prior to June 1, 1906; that the defendant De Selding was acting as the agent of the company in collecting rents and received commission for so doing; that the defendant Hill furnished information regarding the cold storage building and the income to be expected therefrom; that Tubby performed the services of an architect, and had full charge of all the plans of the building; that from June 6, 1906, to October 8, 1906, he saw De Selding, Tubby, and Hill almost daily, in his office and sometimes in their offices, frequently more than once a week, and some of the time they were absent from the city; that the circular of August 1, 1906, was drafted prior to that date, and drawn principally in the office of the company at 2 Wall street; that he worked part of the time with De Selding; that he was not certain about Hill, because he was absent; that he worked with Tubby, De Selding, and his lawyer; that there were a half dozen or more drafts made; that the drafts of the proposed circular were read over at meetings of the board of directors, and suggestions were made, and they were then sent to the printer for a proof; that all the directors helped more or less in that work; that they all saw the circulars; that they all had copies of them; that he sent copies to Hill by mail; that this was all prior to August 1, 1906, when the circular was finally printed. De Selding did not put any money into the corporation. Tubby received some money for his services as architect, and Hill received some money for his services as a cold storage expert, and that money all came from subscriptions to the preferred stock. On cross-examination, Bartlett was quite indefinite as to his recollection as to the connection of these defendants with the preparation of this circular; but he insisted that he had submitted this circular in suit to these defendants some time in July, 1906. He admitted that he was informed that De Selding was out of the city in July, 1906. Again, on redirect examination, he said the original prospectus—that of May, 1906—was afterward modified by further changes, which were submitted to the directors of the company, De Selding, Tubby, and Hill, in addition to himself, and that the prospectus was in all things approved by the directors.

Thompson, who was afterward secretary of the company, was also examined as a witness. He testified that in all $114,600 was received in subscriptions for the stock of the company; that of this amount $100,000 went into the purchase of the property; that Tubby received approximately $2,000; that Hill received about $1,800. Thompson remembered seeing the circular of August 1, 1906, in the office of the company; that every time an offer was made for the sale of stock, that circular was used, and the date of the circular was changed to conform with the offer made for the sale of the stock; that he sent a great many of the circulars to his friends; that they distributed the circulars as widely as possible to secure subscriptions to stock; that De Selding, Tubby, and Hill conferred with Bartlett; that after the circular was printed he delivered personally at the office of Tubby and De Selding these circulars, and also mailed some to Hill, immediately upon receipt. On cross-exam-

ination, Thompson said that he was not prepared to swear that De Selding was in New York in the month of July, 1906. There was also other evidence of the attendance of these defendants at the office of the company during July and August, 1906.

We have, further, the conceded fact that there was a meeting of directors of this corporation on June 11, 1906, at which De Selding was present, and when the company was organized; on July 16, 1906, at which Bartlett, Hill, and Tubby were present; on September 5, 1906, at which Bartlett, Tubby, Hill, and De Selding were present; and on September 14, 1906, this circular was sent to the plaintiff, and resulted in obtaining from him the subscription, to recover which this action is brought. We also have the evidence, which does not seem to be disputed, that during the period from August 1, 1906, to September 14, 1906, these circulars were in common use, were distributed widely to any one from whom it was thought subscriptions could be obtained; that a copy of the circular was sent to Paris by the president of the company to obtain subscriptions in the preferred stock of the company. We then have the detailed denials of these three defendants appellants that they ever knew of this circular, ever authorized its publication or distribution, and ever had anything to do with any subscriptions based upon it.

The court has found that these defendants did issue these circulars. Whether or not, in any one month during the period, either one of the defendants was present in New York, or was present in the offices of the company when these circulars were being distributed, is more or less immaterial. The question is whether these defendants did authorize the issue of these circulars, whether with their authority or knowledge they were prepared or issued to secure subscriptions to the stock of the company from the plaintiff by the defendants. I think the evidence amply sustains the finding that the defendants knew of the issue of the circular, and that it was issued by their authority and consent, and that they were liable for any injury to the plaintiff by reason of the false statements therein contained.

These defendants appellants lay great stress on the fact that the trial court found, at the request of the defendants De Selding and Tubby, "that the defendant De Selding was out of town during the time that the second circular was being prepared, and did not consult with Bartlett about the fresh details of the circular complained of," and "that these defendants De Selding and Tubby did not assist Bartlett in the preparation, and did not join with him in the issuing, of the circular complained of." But I do not think that these findings are in any way inconsistent with the finding that defendants issued these circulars, or with the further finding that they issued these circulars "with the intent that it should be distributed among the investing public for the purpose of inviting subscriptions and raising money." Therefore I think, upon this direct finding of fact, that these defendants did issue or authorize the issue of this circular was sustained by the evidence. Thus, having arrived at the conclusion that the defendants were responsible for the issue of the cir-

cular, it follows that the judgment should be affirmed; the other questions having been disposed of on the former appeal in the action by Lehman-Charley.

The judgment is affirmed, with costs.

McLAUGHLIN and DOWLING, JJ., concur.

HOTCHKISS, J. (dissenting). It is evident, from the findings and other portions of the record, that the appellants were held liable as coadventurers on the authority of Downey v. Finucane, 205 N. Y. 251, 98 N. E. 391, 40 L. R. A. (N. S.) 307. I do not think the facts bring this case within the rule there applied. If appellants are liable at all, I think it must be because they actually participated in or had knowledge of the use of the circular of August for the purpose of securing stock subscriptions. I construe the findings of fact, made at the request of the several appellants, to the contrary.

The judgment should be reversed.

LAUGHLIN, J., concurs.