The application of the judgment creditor for a writ of mandamus is denied, and likewise the prayer of the intervening claimant, but without costs in either case.    Settle orders on notice.

---

(74 App. Div. 508.)

## FLANAGAN v. SHAW et al.

(Supreme Court, Appellate Division, First Department.    July 8, 1902.)

1. USURIOUS CONTRACT.

    Where an agent of a mortgagee required the mortgagor to execute to the agent's wife a conveyance of property in which the mortgagor had an equity as compensation for services of such agent, and the mortgagee had no knowledge of the agreement to give the agent such bonus, the mortgage is not usurious.

2. NOTICE TO AGENT—LIABILITY OF PRINCIPAL.

    A first mortgage was held by an individual, and some of the junior mortgages by a bank.    The mortgagor applied to the first mortgagee to release a portion of the mortgaged property from the lien of the mortgage, and also applied to her and the bank to extend the mortgages.    *Held,* that the fact that the mortgagor was attorney for the bank in other matters does not charge the bank with notice of the release executed by the first mortgagee, so as to make the acts of the mortgagor in procuring such release the acts of the bank.

3. SENIOR MORTGAGE—RELEASE—EFFECT.

    Where a senior mortgagee, in order to enable the property to be sold, released a portion thereof from the lien of his mortgage, while he is chargeable with the loss occasioned to him by such release, he is also entitled to be credited with any benefit resulting to the junior mortgagees, which was only made possible by the execution of the release.

Appeal from special term, New York county.

Action by James Flanagan against John C. Shaw and others.    The West Side Bank, Horace K. Thurber, William Buhler, Jr., and William P. Beach, substituted for the West Side Bank, interpose claims.    Judgment for plaintiff.    From an order confirming the report of the referee in surplus money proceedings, William P. Beach, substituted as claimant for the West Side Bank, appeals.    Affirmed.

The following is the opinion of Noah Davis, Referee:

The several orders of reference in the several above-entitled actions referred to me substantially the same questions, and the parties who have appeared upon the reference to assert their respective claims have entered into a stipulation as to many of the facts, rendering it unnecessary that I should do anything further than refer to the stipulation as my finding upon the several questions of facts embraced in and covered by it.    The questions left, therefore, for me to determine are, in substance, which of the several contestants are entitled to the surplus moneys arising from the sales that have been made in several of the actions from foreclosures of mortgages, or to a part thereof, and to what extent.

As to the surplus arising in actions Nos. 2 and 3, the claim of William Buhler, Jr., executor, etc., is not contested by any of the other claimants or parties in this proceeding.    To that surplus the claim of William Buhler, Jr., is established, and an order should be entered awarding the whole of the same to him.

The claims to the surplus arising in the other actions are as follows: First. Mr. William Buhler, Jr., executor, etc., claims to be entitled to the whole thereof under the mortgage executed by the defendant John C. Shaw to Ottilie Haag, and assigned by her to the testator of the claimant.

Second. The West Side Bank claims to be entitled to the whole or some portion of the surplus in actions Nos. 1 and 6 by virtue of mortgages held by it on the premises affected by those foreclosures. Third. And Horace K. Thurber claims, by virtue of two mortgages, the surplus in actions Nos. 4 and 5. Both of these claims (of the West Side Bank and Thurber) depend upon the same questions, which are: First, whether the mortgage under which William Buhler, Jr., claims is or is not void for usury; and, secondly, whether the mortgagee in such mortgage, which originally embraced other property, not affected by these foreclosures, had released from the lien thereof such property, under circumstances which entitle the claimants to insist that the value of the property so released should be applied as payments or equitable reductions thereof upon her mortgage for the benefit of said bank and said Thurber as junior incumbrancers. so as to give them priority over the claim now made by said executor. The first question to be considered, therefore, is whether the mortgage executed by Shaw to Ottilie Haag was or was not void for usury. The facts upon which this question arises are, in substance, as follows: The defendant John C. Shaw, who was then the owner of the premises, on the 9th day of May, 1889, made and executed a mortgage for the sum of $38,000 to Ottilie Haag to secure that amount of money loaned by her to him. This loan was made through Kaufman Simon, who was a brother-in-law of Ottilie Haag, and acted as her agent in negotiating and making said loan. As a part of the negotiation between Simon and Shaw, the latter agreed with Simon that he would convey to Emilie Simon, his wife, a certain other house and lot, subject to a mortgage, and in which his interest was of the value of several thousand dollars over and above the incumbrances thereon; and such conveyance was subsequently made. The negotiation for the loan was made in part by Shaw and in part by Emanuel J. Meyers, a lawyer in the office of Mr. Shaw, and in his employment. It appears by the testimony that Meyers was a lawyer, and that he was consulted by Mr. Simon especially upon the question whether or not the payment by Shaw to Mr. Simon of the house and lot would affect the validity of the mortgage to be given to Ottilie Haag' for the loan on the ground of usury; that Meyers not only advised but assured Mr. Simon that it would not have such effect, and showed and read to him the several cases in the court of appeals in which that question had been determined, and that Simon was induced by such assurances and advice to enter into the arrangement. The only direct testimony tending to show that Ottilie Haag had any knowledge or notice of this arrangement was given by Meyers, who testified, in substance, that she was on one occasion present in the room at Simon's house when a conversation occurred between himself and Simon, in which she took no part, and which she is not shown to have in fact overheard. This testimony is flatly contradicted by Simon, who testifies that Miss Haag was never present at any interview or conversation between himself and Meyers on the subject of this mortgage or loan. In my opinion, the testimony of Meyers in respect of the alleged conversation is hardly credible when viewed in connection with the fact of his relation to the transaction, the advice he had given to Simon, and the pains he had taken to exhibit the decisions of the court of appeals to convince Simon that his receiving the house in compensation for procuring the loan would not taint the mortgage with usury. He testified that he not only stated what the law was on the subject, but showed the latest authorities,—took down the books and showed him,—and "in one or two instances I copied a paper from one of the court of appeals cases"; and also that Simon told him "he wanted to be sure that in placing this money out it should be in such form that any bonus or advantage he took from it could not be put against the party who actually lent" the money. From the evidence in the case I am unable to find that Ottilie Haag, the lender of the money, knew that Simon, who acted upon her behalf in making the loan, had received or was to receive any such conveyance or other compensation, or that she knew that the agent would receive such benefit on his own behalf. Under the judicially established rule, the borrower of money may bargain with the agent of the lender, or his own agent, as the case may be, to pay him any bonus they may agree upon for the obtaining

or making of the loan, without affecting the loan itself with the taint of usury, provided the lender has not knowledge of the taking of such loan, and no interest therein, and does not assent thereto. In Stillman v. Northrup, 109 N. Y. 473, 477, 17 N. E. 379, 380, the law is thus stated: "To render the note void for usury, it was not sufficient for the defendants merely to show that plaintiff's agent took and exacted the $50 as a condition of the loan. But it was incumbent upon them to show that he took the $50 with the knowledge and assent of the plaintiff, so that she, at least by acquiescence, became a party to the usurious exaction. Condit v. Baldwin, 21 N. Y. 219, 78 Am. Dec. 137; Estevez v. Purdy, 66 N. Y. 447; Van Wyck v. Watters, 81 N. Y. 352; Philips v. Mackellar, 92 N. Y. 34. And the burden of establishing such knowledge and acquiescence on the part of the plaintiff rested upon the defendants, and they were bound to sustain that burden by satisfactory evidence. The defense of usury, involving crime and forfeiture, cannot be established by mere surmise and conjecture, or by inferences entirely uncertain. If, upon the whole case, the evidence is just as consistent with the absence as with the presence of usury, then the party alleging the usury has failed; and so it has been repeatedly held." Citing authorities. Under the rule laid down in these cases I find myself constrained to hold that the allegations of usury upon which it is claimed that the mortgage to Miss Haag was invalid are not sustained. Upon the evidence before me in the case I find that the mortgage executed by Shaw to Ottilie Haag is a valid one, not tainted or affected by usury, and that Buhler, Jr., is entitled to enforce the same.

It becomes, therefore, necessary to consider whether the claim of the defendant Buhler as second mortgagee can be resisted successfully on the ground that the release which was given by Miss Haag of part of the property, which was covered originally by the mortgage, subordinated in equity her rights partly or entirely to those of the bank and Thurber as junior mortgagees. It is claimed by the counsel for Buhler that, even if Miss Haag released property, which otherwise could have been applied in payment of her mortgage, the West Side Bank is not in a position to take advantage of such release, because it was given at its own request, or at the request of Shaw acting on its behalf. In my view, however, this position cannot be maintained. It appears from the evidence that Mr. Shaw, in trying to make a deal with Mr. Buhler, Jr., as to this property, acted on his own behalf, and that his request to Miss Haag to give a release, and to her and the bank to extend their mortgages, were made on his own behalf, and for the furtherance of his own interests. The fact that he was attorney for the bank in various other matters does not, under the circumstances, charge the bank with notice of the release, nor does it make the acts of Shaw in procuring such release the acts of the bank. This view makes it necessary to consider the testimony which is given as to the value of the property released by Miss Haag. The testimony on this point is conflicting. It appears to me that the experts on the part of the bank and Thurber put the value of the property at too high a figure, taking into consideration the fact that it appears that the greater part of the houses are vacant, and that those which have been rented only bring in each from $50 to $70 a month. In view of these facts I do not see how a valuation of the property at $18,000 can be maintained. On the other hand, the value put on the property by the experts called on behalf of Mr. Buhler seems to me to be too low. The question is not what the houses would sell for at the present time, but what they would have sold for at the time that Miss Haag made the release in question. It appears that shortly before that time several of the houses in question were mortgaged for loans actually made by responsible institutions for values varying from $11,000 to $12,500. This fact, taken in connection with the other fact that these houses were subsequently retransferred by Mr. Buhler to Mr. Shaw subject to $70,000 of mortgages, and that for the equity two mortgages at $10,000 were given, and taken also in connection with the expert testimony and valuations, lead me to the conclusion that a fair valuation of the houses at the time that Miss Haag gave the release was $15,000 apiece. This would make the total valuation of the six houses in question $90,000. The amount of incumbrances prior to Miss Haag's

was $72,880.37. It is admitted that $4,000 has to be deducted from the value of the houses on account of their not being finished. This makes the amount to be deducted from the $90,000 $76,880.37. In making up this amount of incumbrances I think that the Willson and Adams mortgage should be allowed for the full amount of $2,500. The fact that subsequently, in view of an arrangement (the nature of which is not disclosed), it was released on payment of the sum of $1,447, does not affect the rights of Miss Haag to claim (certainly not in an equitable action of this character) that, if she had taken foreclosure proceedings, this prior mortgage would not have had to be paid for its full amount out of the proceeds of the foreclosure sale. These valuations would charge Miss Haag with the difference between $90,000 and $76,880.37, namely, $13,119.63, and would reduce her mortgage, as against the defendants the West Side Bank and Thurber, from $30,000 to $16,880.37. But in applying the rule invoked by the bank and Thurber it must not be forgotten that this rule is not an inflexible one, but one which is of an equitable nature, and intended to bend in its application to the circumstances of each case, and that its object is to prevent junior mortgagees from being injured by the inequitable acts of a prior mortgagee. The giving of a release by Miss Haag was a condition of the deal between Shaw and Buhler. The inference is, therefore, not only justified, but necessary, that, but for such release, the deal would not have been made. It would be idle to speculate on the question whether, perhaps, Mr. Buhler would have bought the property anyhow; and on the facts presented, it being admitted that such release was asked for by Buhler as a condition, the only legitimate conclusion is that it was necessary to comply with such condition if the deal was to go through at all. It is therefore a subject of legitimate inquiry whether the bank and Thurber were injured by the transaction, of which the release given by Miss Haag was a part; and, if Miss Haag is to be charged with the injury caused by her release to the bank, she is, in equity, to be credited with the benefits which the bank reaped from the deal, which was made possible by her release.

It appears that the lien of the Jackson Architectural Iron Works, which was a lien prior to the bank's mortgage, was discharged in consequence of the deal in question, and that a mortgage on some of the property conveyed to Shaw by that deal was taken in satisfaction of it. It appears that the face value of that lien at that time, with interest, was $9,166.44. It appears in the testimony that some payments had been made on account, the amount of which does not appear; but, as it is uncontradicted that the mortgage which was taken in satisfaction of said loan was for $8,000, it may fairly be inferred that the amount which was due on said loan at that time was the amount of $8,000. I find, therefore, that Miss Haag, in ascertaining the amount she has released, is equitably entitled to be credited with said amount of $8,000. This would bring the claim of Miss Haag up to $24,880.37; but another item which has been paid out of the moneys which came to Mr. Shaw in consequence of the transaction with Mr. Buhler, and for which Miss Haag is entitled, in equity, to be credited, brings the amount of the mortgage which she can equitably enforce as against the bank and Thurber to an amount at least as large as the whole surplus in contest. It appears that $1,525 of interest, which was due on the Haag mortgage, was paid out of the $16,000 which came to the hands of Mr. Shaw. It also appears that Mr. Shaw was in embarrassed circumstances. It may fairly be inferred that it would have been impracticable for him to pay such interest, and that, therefore, Miss Haag's mortgage, which was ahead of the bank, would have been increased by the amount of the $1,525 of unpaid interest which was thus paid. Such increase was averted by the payment which came out of the money raised by the Buhler transaction, and Miss Haag is therefore equitably entitled to be credited with that amount as against the claim of the bank that she had released part of her securities to its injury. The addition of this sum would bring the amount for which Miss Haag can enforce her mortgage to a sum larger than the whole of the surplus.

There are various other items with which it is claimed Miss Haag should be credited as against any equitable liability incurred by her to the bank or Thurber by her release; but I do not consider it necessary to consider

the same, because it is already shown that in equity Miss Haag's rights to the surplus are superior to those of the bank or of Thurber.

The several parties who contested before me the question touching their respective rights to the surplus entered into a stipulation as to certain of the disbursements of the hearing and trial. So far as relates to those disbursements, the stipulation is controlling.

The said William Buhler, Jr., executor, etc., being entitled to recover the whole amount of said surplus, is entitled to recover against the West Side Bank and said Thurber his disbursements and taxable costs, to be ascertained as to the items specified in said stipulation in accordance with its provisions.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

John C. Shaw, for appellant.
Edward B. Whitney, for respondent.

PER CURIAM.   Orders affirmed, with costs, on the opinion of the referee.

---

ONONDAGA COUNTY v. WHITE et al.

(Supreme Court, Special Term, Onondaga County.   June 21, 1902.)

1. CONDEMNATION—DISCONTINUANCE—COSTS AND EXPENSES.
    Code, § 3374, relating to condemnation, provides that, before 30 days from the expiration of the final order, the court may authorize the abandonment of the proceedings on payment of fees and expenses of the commissioners, costs and expenses directed to be paid ·in the final order, if it has been entered, and "on such terms and conditions as the court may prescribe."   Section 3374, as first adopted in 1890, provided that, within 30 days after entry of the final order, the plaintiff might abandon the proceeding by paying the fees and expenses of the commissioners, and the costs and expenses directed to be paid in such order. Chapter 198, Laws 1876, which first gave the right to abandon after final order, amended section 18 of the railroad law (chapter 140, Laws 1850) by providing for such abandonment by a railroad company on giving notice, and paying the reasonable costs and expenses of the owner, to be ascertained and adjusted by the court.   On discontinuance before final order, the landowners claimed expenses in counsel fees, loss of tenants, and rents.   Held, that the larger provision for costs of the act of 1876 not having been adopted in section 3374, the phrase "on such other terms and conditions" did not apply to costs and expenses of such character on a discontinuance before the appointment of commissioners, but the plaintiff was entitled to an order giving leave to discontinue on payment of taxable costs to the parties who have appeared, and costs of motions, and also the compensation of the guardian ad litem of an infant defendant, to be fixed under rule 50, relative to compensation to guardians ad litem, with opportunity to plaintiff to file answering affidavits.

2. SAME—APPOINTMENT OF COMMISSIONERS.
    Condemnation law (Code, § 3371) provides that after the report of commissioners any party may move for a confirmation, and, under section 3373, the amount directed to be paid shall be docketed as a final judgment.   Sections 3379 and 3380 provide relief to a landowner when plaintiff has gone into possession and discontinues.   Held that, when the plaintiff seeks to discontinue before the appointment of commissioners, a landowner has no right to compel the appointment of commissioners, so as to obtain his expenses, etc., under section 3374, providing that within 30 days after entry of the final order the plaintiff may abandon the proceeding by filing and serving a written notice of its determination