FLORIDA NAT. BANK OF GAINESVILLE, FLA., v. MERCHANTS' &
FARMERS' BANK OF CLAXTON, GA.

(District Court, S. D. Georgia.   November 10, 1915.)

1. BANKS AND BANKING ⊙—117—REPRESENTATION OF BANK BY OFFICER—IN-
   DIVIDUAL INTEREST OF OFFICER.

   Where a third person deals with an officer of a bank in a matter in
   which the officer is personally interested, the officer acts in a dual and
   inconsistent capacity, and his acts are not binding upon the bank.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 288;
   Dec. Dig. ⊙—117.]

2. BANKS AND BANKING ⊙—117—REPRESENTATION OF BANK BY OFFICERS—IN-
   DIVIDUAL INTEREST OF OFFICER.

   Where the holder of a certificate of stock in a bank as collateral se-
   curity for a debt of its cashier sent such certificate to the bank itself,
   with a request that smaller certificates be issued in lieu thereof and re-
   turned, which the bank undertook to do, it was responsible for the proper
   execution and return of the new certificates, and is liable for the action
   of its cashier in raising certain of the certificates after they were signed,
   sending the raised certificates, and retaining others equal to the differ-
   ence.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 288;
   Dec. Dig. ⊙—117.]

3. CORPORATIONS ⊙—123—STOCK—CONVERSION—ACTION BY PLEDGEE—ALLE-
   GATION OF DAMAGES.

   In an action by a holder of stock as collateral security to recover dam-
   ages for conversion of a portion of the stock, plaintiff, as a basis for
   damages, must allege the amount of the debt secured.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491,
   507–512, 537, 539–546, 569, 618; Dec. Dig. ⊙—123.]

At Law.   Action by the Florida National Bank of Gainesville, Fla.,
against the Merchants' & Farmers' Bank of Claxton, Ga.   On demurrer
to petition.   Sustained in part.

This is a suit at law, and in its petition plaintiff alleges that defendant is
indebted to it in the sum of $5,000, besides interest, for its negligent and
fraudulent failure to deliver to plaintiff 40 shares of the capital stock of the
Georgia bank, of the par value of $125 per share, to which the Florida bank
claims that it was entitled.   The petition alleges that on March 2, 1912,
plaintiff was the owner and holder of 160 shares of the capital stock of de-
fendant bank, same being held as collateral security for certain loans made
by plaintiff to one J. B. Smith, who was at that time the cashier of the
Georgia bank; that on February 14, 1912, said J. B. Smith requested the
plaintiff to send the stock certificate for said 160 shares of stock to the Georgia
bank, with instructions to divide it into smaller certificates, and that on
March 2, 1912, plaintiff forwarded said certificate for said 160 shares of
stock to the defendant bank at Claxton, Ga., with the request that said bank
should reissue this stock in a large number of smaller certificates, and have
same transferred to the Florida bank by Mr. Smith, and to return same under
registered cover; that said stock certificate was received by defendant bank,
and that said J. B. Smith, as cashier, prepared new certificates in lieu of
the old certificates, and that the president of the bank signed same; that
two of these smaller certificates, signed by the president, were for five shares
each, but that the said cashier, in writing out these certificates for 5

shares each, wrote the word "five" with a small "f" and at a sufficient distance to the right of the left margin of the certificate, so as to enable him to write before said word "five" any other word expressing a larger number of shares, and that similarly said J. B. Smith, as cashier, placed the figure "5" in the space indicated upon said certificates to show in numerals the number of shares for which the certificate was given, at a sufficient distance to the right of the space indicated, so as to enable him to place before said figure "5" any other figure so as to express a larger number of shares; that the president of said bank negligently and carelessly signed said certificates of stock so prepared by said cashier without in any wise filling in or obliterating the spaces so left by said cashier as above set forth, so as to prevent the fraudulent raising of said certificates; that the president of said bank delivered to the said J. B. Smith, as cashier of the bank, the said various smaller certificates aggregating 160 shares of stock, including the two for 5 shares each above mentioned, so that he could transmit same to plaintiff in lieu of the original certificate sent by plaintiff to said bank; that said cashier, before transmitting said two certificates for 5 shares each to plaintiff, raised same, so as to indicate that they were for 25 shares each, by putting the figure "2" before the figure "5" and the word "twenty" before the word "five" in the appropriate places on said certificates, thus enabling said cashier to abstract 40 shares of said capital stock—the true amount of the valid stock thus returned to plaintiff being 120 shares, instead of 160, which were sent to said defendant bank. Plaintiff therefore claims in its suit that it was damaged in the sum of $5,000, which was the value of the 40 shares of stock to which it was entitled, and which were not returned to it.

The defendant duly filed its demurrers, both general and special, to said petition; the main grounds which the court thinks it necessary to notice in this opinion being as follows: That said petition is not sufficient in law; that said petition shows on its face that the transaction in question was a transaction between the Florida bank and said J. B. Smith, not as cashier of the Georgia bank, but as an individual conducting his private individual business, in which he and the plaintiff alone were interested, and with which the Georgia bank had no concern; that the petition shows that said Smith was not acting as cashier of the defendant bank in his official capacity in said transaction, but, on the contrary, was acting as an individual, and as the agent and representative of the plaintiff; that the petition shows that plaintiff was not the owner of said 160 shares of stock, but simply held same as collateral security for an indebtedness due by said Smith to plaintiff; and that the amount of $5,000 damages claimed by plaintiff is a mere conclusion of the pleader, and no facts warranting such conclusion are stated in the petition.

Garrard & Gazan, of Savannah, Ga., for plaintiff.

Oliver & Oliver, of Savannah, Ga., and J. Saxton Daniel, of Claxton, Ga., for defendant.

LAMBDIN, District Judge (after stating the facts as above). The case is now before the court on the demurrer of defendant. Of course, the court in deciding this demurrer must accept as true all the allegations of the petition which are well pleaded, and also such inferences as a jury may reasonably draw therefrom.

[1] 1. While the acts of a cashier of a bank performed within the scope of his duties are ordinarily binding upon the bank, it is well settled that, where a third person deals with the officer of a bank in a matter in which the officer is personally interested, the officer then acts in a dual and inconsistent capacity, and his acts are not binding upon the bank. 5 Cyc. p. 466; Moores v. Citizens' Nat. Bk. of Piqua,

111 U. S. 156, 4 Sup. Ct. 345, 28 L. Ed. 385; Germania Safety Vault & Trust Co. v. Boynton (Circuit Court of Appeals, Sixth Circuit) 71 Fed. 797, 19 C. C. A. 118.

[2] In this case, therefore, if the plaintiff bank had dealt alone with the cashier, J. B. Smith, and had intrusted to him the certificate of stock in question, and requested him to have smaller certificates issued to it in lieu of the original, and if J. B. Smith had caused the president of the bank to sign up the smaller certificates representing the required amount of stock, and had then, after the president had signed these certificates, raised two of same, so as to enable him to convert 40 shares of stock, as described in the petition, the defendant bank, under the principles laid down in the above authorities, would not have been bound by the act of its cashier, because the cashier in such event would have been acting entirely in his own personal matter, and his interest would have been adverse to that of the bank.

The Circuit Court of Appeals of the Eighth Circuit had before it just such a case as that supposed in the preceding sentence in the case of Exchange National Bank of Spokane v. Bank of Little Rock, reported in 58 Fed. 140 to 143, 7 C. C. A. 111, 22 L. R. A. 686, in which the court, speaking through Sanborn, Circuit Judge, held that where a clerk, acting in his individual matter, raised a draft which had already been completed and signed by the cashier of the bank for the sum of $25 to $2,500, and negotiated same to an innocent purchaser, the bank was not bound; that the forgery by the clerk, and not the negligence of the bank, was the proximate cause of the loss; and that in the transaction in question the clerk did not act as an employé of the bank, but in an inconsistent relation. The court in that case draws a distinction between cases where officers of banks execute checks or notes leaving blanks therein, which are subsequently filled in, and the instruments then sold to innocent purchasers, and cases where completed checks or notes are executed by bank officials, and afterwards raised by subordinates in the bank or other persons. Although there is a conflict of authorities on the subject, the court thinks that the reasoning of Judge Sanborn in the case in question is sound, and it gives its full assent to same. The decision of the Supreme Court of the United States in the case of Moores v. Citizens' National Bank of Piqua, 111 U. S. 156, 4 Sup. Ct. 345, 28 L. Ed. 385, cited above, is to the same effect.

However, in the case at bar, the petition expressly alleges that plaintiff sent the stock in question, not to the cashier, J. B. Smith, but to the "defendant bank" itself, and that the "defendant bank" received this stock and undertook to have smaller certificates reissued and returned to plaintiff. The plaintiff, therefore, was careful not to attempt to deal with J. B. Smith himself in the matter, but undertook to deal with the bank; and, having intrusted 160 shares of stock to the bank to be reissued in smaller certificates, it had the right to have returned to it the whole amount of 160 shares, and if a smaller amount was returned, the bank, under the allegations of the petition, would be liable for the deficit. The court is compelled to take the allegations of the petition as they stand. What the evidence will show on the trial is

another question. If it should develop in the trial of the case that plaintiff either knew, or by the exercise of ordinary diligence should have known, that the letter in which it forwarded the certificate for 160 shares would be received by Cashier J. B. Smith, and that the matter would be handled by him, then the principles contended for by defendant in its demurrer would be sound, according to the authorities above cited, and the plaintiff would not be entitled to recover in the case. But under the allegations of plaintiff's petition plaintiff did not undertake to deal with J. B. Smith, the cashier, but undertook to deal directly with the bank itself, and therefore the petition sets forth a good cause of action on its face, although the ground of liability may be a narrow one. Of course, as the matter in question was a personal matter between the plaintiff bank and Cashier Smith, plaintiff was bound not to deal with him in having its stock reissued, but should have dealt with some other officer of the bank not occupying an adverse relation. Whether plaintiff was justified, under the circumstances, in mailing its certificate of stock to the "defendant bank," on the assumption that Cashier Smith would not receive the letter and handle the transaction, but that some other officer of the bank would do so, is not for the court to decide as matter of law, but same is a question of fact, to be submitted to the jury under proper instructions for their determination.

It is a maxim in equity that, where one of two innocent persons must suffer by the act of a third person, he who puts it in the power of the third person to inflict the injury must bear the loss. It is necessary for a person, in order to take advantage of this principle, to show that he is innocent and not negligent. The plaintiff bank, under the allegations of its petition, exercised due care, and was entirely innocent in the matter, and therefore the loss should fall on the defendant bank, as the defendant bank, by its employment of J. B. Smith as cashier, put it in his power to do the wrong in question. However, if on the trial of the case it should develop that the plaintiff bank was negligent, and therefore not an innocent party, but knew or ought to have known that the letter would be received by Cashier Smith and that he would handle the transaction, then it should suffer the loss, because by so sending the stock to Cashier Smith it placed it in his power to commit the fraud complained of.

[3] 2. The plaintiff's petition, however, is defective, in that it does not clearly set forth the extent of its damages. It alleges that it held the stock only as collateral security for an indebtedness due to it by J. B. Smith. Of course, although it only held this stock as collateral, it had the right to sue for any conversion of the stock, as it had a special property in same. However, the amount of its debt against J. B. Smith is not set forth in the petition. Plaintiff bank would be entitled to recover only to the amount of its damage. It is possible that the 120 valid shares of stock received by it are sufficient in value to pay the amount of this indebtedness against Smith, and if such is the case it would not be damaged at all in the transaction. Therefore an amendment should be filed by plaintiff, setting forth the amount

of its indebtedness against Smith and the extent of the damages sustained by it on account of the transaction in question.

An order, therefore, will be entered in the case, overruling the demurrer of defendant on all the grounds except the sixteenth, and requiring plaintiff to file the amendment above suggested.