LEWIS A. CUSHMAN, Appellant, *v.* OTTO P. AMEND, Respondent.

First Department, January 26, 1917.

Fraud — action on promissory note — defense that note was given in payment of worthless stock — counterclaim for damages for fraud — proof insufficient to establish that plaintiff was not holder in due course or was chargeable with false representations of third person — evidence — statement issued by president of corporation containing plaintiff's name — minutes of meeting of executive committee — — appeal — direction of judgment by Appellate Division.

Action on a promissory note brought by a plaintiff claiming to be a holder in due course against the defendant as maker, the latter setting up as a defense that the note was given in part payment for worthless stock which he had been induced to buy by the fraudulent representations of the president of a corporation in which the plaintiff was a stockholder, but not an officer, and also setting up a counterclaim for damages resulting from his purchase of the stock. The defendant successfully defeated a recovery on the note and obtained judgment against the plaintiff on his counterclaim, although there was no proof that the plaintiff authorized the president of the corporation to make false representations, or knew that they had been made, or that he himself had made any representations, false or otherwise, to the defendant. It was not proved that the plaintiff owned or was interested in any stock purchased by the defendant or gained anything by said purchase except as he might be interested in the fact that the corporation was provided with capital. Evidence examined, and *held*, insufficient to establish that the plaintiff was not a holder in due course, and that he was entitled to recover on the note; that the evidence was insufficient to charge the plaintiff with the fraudulent representations of the president of the corporation, and that the judgment upon the counterclaim should be reversed and judgment directed for the plaintiff.

Proof to the effect that the president of the corporation issued a document in the nature of a syndicate agreement in which the plaintiff's name appeared as a member was insufficient to identify the plaintiff as a member of the syndicate where there was no evidence that he signed the document and he testifies that he knew nothing about it.

In such an action the minutes of a meeting of the executive committee of the corporation stating that the plaintiff had seconded a motion to authorize the sale of stock which the defendant bought were inadmissible in evidence against the plaintiff, as the controversy was between him and a third party, the corporation itself being in no way interested.

Where it seems improbable that the defendant can make a stronger case upon a new trial and there is little dispute as to the essential facts, the Appellate Division will direct judgment for the plaintiff and not order a new trial.

APPEAL by the plaintiff, Lewis A. Cushman, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 27th day of June, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 5th day of June, 1916, denying plaintiff's motion for a new trial made upon the minutes, together with notice of an intention to bring up for review an order entered in said clerk's office on the 27th day of March, 1916, overruling a demurrer to the counterclaim.

*Clarence De Witt Rogers,* for the appellant.

*Wallace MacFarlane,* for the respondent.

SCOTT, J.:

The plaintiff sues upon a promissory note for $1,500 made by defendant and acquired by plaintiff for value. The defendant has successfully defeated a recovery upon the note, and has in addition obtained a judgment against plaintiff for upwards of $6,000 damages upon the plea that he was induced to purchase stock in a corporation known as the Blaugas Company of Cuba by means of false and fraudulent representations made to him by one Charles H. O'Neill, then president of the company. It is not claimed that plaintiff actually authorized O'Neill to make any false representations, or that he knew that O'Neill was making or had made them, or that he himself made any representations false or otherwise to defendant, or that he owned, or was interested in the stock purchased by defendant, or that he gained anything by the purchase of the stock by defendant, except perhaps indirectly because he himself was a stockholder in the company and, therefore, interested in seeing it provided with capital. It is sought to impute O'Neill's fraud to plaintiff upon the principle established in *Downey* v. *Finucane* (205 N. Y. 251) and kindred cases. There is little, if any, disputed question of fact in the principal case. In fact at the close of the trial both sides seem to have so considered, for both moved for judgment and neither asked to go to the jury. The trial court, however, of its own motion, sent the case to the jury and directed judgment to be entered on its verdict.

First Department, January, 1917.          [Vol. 176.

The defendant, in October, 1913, purchased from Charles H. O'Neill, then president of the Blaugas Company of Cuba 5,000 shares of the common stock of that company, for the price of $10,000, giving therefor his own notes, indorsed by himself. These notes were delivered by O'Neill to the Blaugas Company. The defendant from time to time made payments on account of these notes, giving renewal notes for the sums not paid, until he had paid $8,500, leaving unpaid the sum of $1,500 represented by the note in suit, which plaintiff acquired by purchase from the Blaugas Company. This note became due on May 27, 1914, and this action was commenced nineteen months afterwards, in December, 1915. The defendant, by his answer, sets up, both as a defense to the note and as a counterclaim, the facts upon which he predicates his contention that he was induced to purchase the stock through O'Neill's fraud, and that such fraud is imputable to plaintiff. The answer was so drawn that the counterclaim might be construed as stating a cause of action, either for rescission or for damages for fraud, and on the trial the defendant abandoned any claim for rescission, and elected to stand on his demand for damages for the fraud.

That O'Neill did make false representations to induce defendant to purchase the stock, and that defendant accepted and relied on them is sufficiently proven, and is not denied by plaintiff. These representations upon which defendant relied at the trial were entirely oral. The misleading circular which figured in *Ottmann* v. *Blaugas Company* (171 App. Div. 197), while mentioned in the answer and referred to in the testimony, is not one of the fraudulent representations relied upon to sustain the judgment, and liability is not sought to be imputed to this plaintiff by reason of any statements contained in that circular.

This leaves for our consideration only the question whether or not sufficient was shown upon the trial to charge plaintiff with the fraudulent acts of O'Neill.

The Blaugas Company of Cuba was organized for the purpose of making and selling a gas which had been invented by a German chemist. The common stock of the company, consisting of 300,000 shares of the par value of $10 each, was

originally issued to O'Neill in payment of the patents which he assigned to the company in December, 1911. O'Neill immediately retransferred to the company stock of the par value of $150,000 to be used as treasury stock, and transferred three shares to each of several gentlemen, including plaintiff, so as to qualify them to act as directors. Of the remaining stock O'Neill retained a considerable amount in his own name, transferred 5,000 shares to plaintiff, and caused upwards of 100,000 shares to be issued to himself as "trustee." For the stock so transferred to him plaintiff paid. In all, at two different times, the plaintiff invested $2,250 in the purchase of stock in the company. The connection of plaintiff with the fraud practiced by O'Neill is sought to be traced through the stock issued to and held by O'Neill, as trustee, the contention being that O'Neill held the stock as trustee for a syndicate of which plaintiff was a member, and that he committed the frauds in an attempt to sell the syndicate stock. To establish this contention defendant was permitted to read in evidence a document in the nature of a declaration of trust signed by Charles H. O'Neill, stating that he held certificates of stock to the extent of 112,455 shares, in trust, for the only benefit and advantage of certain persons whose names appeared in a schedule attached; that he would hold said shares and dispose of the same only on the direction of a committee of said persons, to consist of those of their number who should be at the time members of the executive committee of the company; that the interest of each person in the corpus of the trust should be in the proportion which the sum set after his name on the annexed schedule should bear to the sum of $34,500; that any dividends received should be paid over in the same proportion and that upon request he would divide the unsold stock in the same proportion. Upon the schedule attached appears the name of the plaintiff opposite the sum of $1,000. The plaintiff's name is not signed to the declaration of trust or the schedule, and he testified that he knew nothing about it. No explanation is given in the testimony as to how the trust came to be created except that a former secretary of the company testified that Mr. O'Neill asked him to draw the declaration, and gave him the names to insert in the schedule. This is certainly

insufficient to identify plaintiff as a member of a stock-selling syndicate. It was further sought to identify plaintiff as a principal in O'Neill's efforts to sell stock by reading from the minutes of the executive committee a resolution, purporting to have been seconded by plaintiff, authorizing the transfer agent of the company to transfer stock held by C. H. O'Neill as trustee to any person or persons to whom he might make such transfer. The manner in which the minutes were kept as testified to by Mr. Grimes, the secretary, were such as to reduce to a minimum their probative value on any subject. It was his custom to keep rough memoranda on loose pieces of paper, and then, sometimes many months afterwards, to transcribe his notes in formal language in the minute book, attributing the proposal of resolutions to any one who appeared to have been present, no minute having been kept of the actual proposer. We consider it very doubtful, however, even if the minute book had been properly kept, if it was admissible evidence against plaintiff in a controversy between himself and a third party in which the corporation was in no way interested. The entries were not used to establish any fact pertinent to the relations of plaintiff to the company, but to establish an extrinsic fact, to wit, that plaintiff employed O'Neill to sell his stock, or stock in which he was interested. The minutes were inadmissible for that purpose. (Wigm. Ev. § 1661, subd. 2b.) The minutes may have been admissible to prove *prima facie* that plaintiff was a member of the executive committee and attended certain meetings, but these facts of themselves proved nothing tending to hold him responsible for O'Neill's fraud. Finally it was clearly shown by the company's stock book, and not attempted to be denied, that the stock which O'Neill sold to defendant was a part of his own personal holding, and was neither the company's stock nor the plaintiff's, nor any part of the stock held by O'Neill as trustee, nor stock in which plaintiff had any interest and by the sale of which he could profit. This fact alone is destructive of defendant's case and should have led to a dismissal of the counterclaim. Even if defendant had satisfactorily proven, as he did not, that O'Neill and plaintiff were engaged in a common enterprise to sell plaintiff's stock, or the stock belonging to the company so

that O'Neill's fraud would under the circumstances be imputable to plaintiff, yet if O'Neill departed from his assumed agency and sold his own stock, the plaintiff cannot be held liable for that fraud.

That this must be so is plainly deducible from the authorities. In *Downey* v. *Finucane* (*supra*) a syndicate interested in promoting a corporate enterprise employed an agent named Fenn to sell stock. In attempting to carry out his agency he issued fraudulent representations for which his principals were held liable. This was upon the general principles of agency whereby a principal is held to be responsible for the acts of his agent when performed within the scope of his agency. The Court of Appeals itself has concisely stated just what was intended to be held in that case. In *Rives* v. *Bartlett* (215 N. Y. 33, 37) it was said that the defendants in *Downey* v. *Finucane* were held liable for Fenn's frauds " because they had constituted him an agent of a syndicate organized for their personal profit, and because he acted as agent of the syndicate and not as agent of the corporation." But while it is thus well settled that a principal is responsible for the frauds of his agent while acting within the scope of his authority, it is equally well settled that the principal is not responsible for the fraudulent acts of his agent committed outside the scope of his authority and for his own personal advantage. (*Taylor* v. *Commercial Bank*, 174 N. Y. 181; *Henry* v. *Allen*, 151 id. 1, 11.) Upon a careful review of the evidence we are satisfied that there is no foundation for imputing to plaintiff the fraudulent representations uttered by O'Neill, and that in order to affirm this judgment we should be obliged to go much further in applying the doctrine of imputable fraud than has been done in any case of which we have knowledge. There is little probability that a stronger case could be made upon a new trial, and, in truth, as has already been said, there is little dispute as to the essential facts, as was recognized by both parties when neither asked to go to the jury, and both moved for a judgment. The defendant seeks to sustain the judgment by inferring fraud from facts which do not, of themselves prove, fraud and which are compatible with plaintiff's innocence. The conclusion at which we have thus arrived upon the grounds

above stated renders it unnecessary to discuss a number of other interesting questions which have been raised at bar. That we do not discuss them is not to be taken as indicating that they have not been considered.

The judgment appealed from must be reversed and judgment directed for plaintiff as prayed for in the complaint, with costs in this court and the court below.

CLARKE, P. J., McLAUGHLIN, PAGE and DAVIS, JJ., concurred.

Judgment reversed and judgment directed for plaintiff as stated in opinion, with costs in this court and in the court below. Order to be settled on notice.