F. MAX HUBER, Plaintiff, *v.* LOUIS D'ESTERRE and Others, Appellants, Impleaded with LOGAN TRUST COMPANY OF PHILADELPHIA and HERBERT P. QUEAL, Respondents.

Second Department, November 23, 1917.

Usury — law of place of contract governs — execution of bond secured by trust deed — validity of objection as to amount of commissions paid for negotiation of securities.

Where two brothers sought a loan through a New York attorney who sent a deed of trust of New York lands and the bonds secured thereby and other papers to one of the brothers who resided in the State of Wyoming, where said brother and his wife signed the papers and returned them to said attorney who then procured their execution in New York by the other brother and his wife, and then with the latter brother took the papers to Philadelphia and delivered them to the trustee which after authenticating the bonds passed them to a Philadelphia firm, and the money was then paid to the brothers, the contract did not become finally obligatory until delivery of the instruments and payment of the consideration at Philadelphia, and, hence, under the rule that the place where the last act is performed which is necessary to give a contract validity is the place of the execution thereof, the validity of said contract attacked upon the ground of usury must be determined by the law of Pennsylvania.

Objections to the large commissions retained by the Pennsylvania firm and by the New York attorney are unavailing in view of the protection of the Negotiable Instruments Law, which shuts out defenses as to the commissions paid to negotiate a sale of such securities.

APPEAL by the defendants, Louis D'Esterre and others, from a judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of Kings on the 7th day of December, 1916, upon the decision of the court after a trial at the Kings County Special Term.

The judgment dismissed defenses set up in the answers of Louis D'Esterre and wife and William D'Esterre and wife and adjudged the validity of certain bonds of the face value of $75,000.

*James L. Steuart* [*Frank S. Moore* with him on the brief], for the appellants.

*Marvin W. Wynne* [*Robert H. Neilson* with him on the brief], for the respondents.

PUTNAM, J.:

This is a modern instance resembling what were anciently called post-obit bonds. Appellants are the remaindermen under the will of Otto Huber, who died August 31, 1889, leaving a large amount of land in Kings county which was devised to the widow, Emilie, for her life, with remainder to his children share and share alike. The testator's daughter Lina D'Esterre died on November 15, 1906. She left three sons: Louis, William and Joseph.

The value of the interests of William D'Esterre and Louis D'Esterre in this estate was about $340,000. In 1910 Louis D'Esterre had assigned his separate interest to secure an advance of $50,000 made to him by Edward T. Stotesbury, of Philadelphia.

In 1912 the brothers William and Louis sought a loan on their remainders through Herbert P. Queal, a New York attorney. He took up the matter with the Philadelphia firm of Bioren & Co. A deed of trust to be given by the borrowers covering their interests under the will of Otto Huber was to secure seventy-five $1,000 coupon bonds, dated July 1, 1912, with interest at six per cent, payable in 1952, or on the next interest day, occurring less than thirty days after the death of Mrs. Emilie Huber. This deed of trust ran to the Logan Trust Company and to Queal, the latter being joined as trustee to avoid any question as to a foreign corporation in the New York courts. The form of negotiable bonds was a further safeguard to protect holders in good faith. To cover the $4,500 a year interest on these bonds the borrowers had to buy an annuity yielding that annual sum based on the life of Mrs. Huber, then seventy-two years

of age.  They obtained from the United States Fidelity and Guaranty Company a bond to guarantee the fidelity of the executors of the Otto Huber estate, also that the value of the borrowers' remainders should not fall below $75,000.  In thus borrowing upon their future interest appellants undertook an obligation for $75,000, out of which they only realized about $25,000, but were relieved by the annuity from future interest payments before the bonds should become payable.

After the death of Mrs. Huber, the life tenant, in 1914, certain heirs began a partition suit making the Logan Trust Company and Queal parties.  The D'Esterres served an answer on these trustees, raising usury as an affirmative defense, which issues were severed and afterwards separately tried, resulting in a judgment sustaining the trust deed and the validity of the bonds issued thereunder.

The loan was held to be a Pennsylvania transaction.  The usury law of Pennsylvania (Act of May 28, 1858) was also found as a fact.  (See Penn. Laws of 1858, p. 622, No. 557; 2 Purdon's Digest [13th ed.], 1987, 1988, § 1 et seq.)  This permits a debtor to withhold the excess of interest beyond six per cent.  If voluntarily paid, the debtor must sue to recover it back within six months from such payment.  An agreement to pay more than six per cent does not forfeit the principal or legal interest.  The holders of the bonds were found to have taken them in due course and for value.

Besides the issue as to the *lex loci contractus*, it was contended that the whole scheme was a cloak for usury.  In determining the *lex loci* controlling such negotiation, it is a received rule that " the place where the last act is done which is necessary to give the contract validity, is the place of the execution of the contract." (Page Cont. § 1718; Lawson Cont. § 32; *Milliken* v. *Pratt*, 125 Mass. 375; *Scudder* v. *Union National Bank*, 91 U. S. 406; *Thompson* v. *Taylor*, 66 N. J. Law, 253.)  Mr. Queal first sent the deed of trust, the seventy-five bonds, and other papers, to · William to be executed in Wyoming, where William and his wife signed, and returned them to Mr. Queal in New York.  Execution followed by Louis D'Esterre and wife in New York.  Then Mr. Queal, with Louis, took all the papers to Philadelphia and handed them over to the Logan Trust

Company, as trustee. The Logan Trust Company next authenticated the bonds, and passed them to Bioren & Co., and the money was paid in the form of Logan Trust Company checks to the order of the D'Esterres. The contention that the papers had been earlier delivered in New York, because Mr. Queal, being one of the trustees, manually carried the papers to Philadelphia, is unsupported. Queal then went with his client, in his capacity as his attorney, as Louis has admitted in his testimony. This contract did not close, and become finally obligatory, until delivery of the instruments and payment of the consideration at Philadelphia. The obligations being valid in Pennsylvania (as the place both of making the contract and of performance by payment), will be upheld here, although the land affected may be in New York. (*Manhattan Life Ins. Co.* v. *Johnson,* 188 N. Y. 108.)

The determination that the law of Pennsylvania is controlling disposes of these various defenses. Even the objections to the large commissions retained by Bioren & Co. and by Queal are unavailing, in view of the protection by the Negotiable Instruments Law (passed in Pennsylvania May 16, 1901,* similar to Consol. Laws, chap. 38; Laws of 1909, chap. 43), which shuts out defenses as to the commissions paid to negotiate a sale of such securities. (*Baldwin* v. *Doying,* 114 N. Y. 452; *Flanagan* v. *Shaw,* 74 App. Div. 508; affd., 174 N. Y. 530.)

I advise to affirm the judgment, with costs.

JENKS, P. J., THOMAS, MILLS and BLACKMAR, JJ., concurred.

Judgment affirmed, with costs.

---

* See Penn. Laws of 1901, p. 194, No. 162; 3 Purdon's Digest (13th ed.), 3252 *et seq.*— [REP.