MILES R. MARTIN, JR., Plaintiff, *v.* GOTHAM NATIONAL BANK OF
NEW YORK and Others, Defendants.

Supreme Court, Kings County, August 19, 1925.

**Banks and banking — action to rescind loan for fraudulent representations and to recover balance due thereon — plaintiff made loan to defendant construction company upon assurance of officer and agent of defendant bank — statements by said officer and agent, made primarily to collect worthless note held by bank, knowingly false — fact that bank profited by plaintiff's investment and thereafter failed to repudiate fraud warrants finding making all defendants equally liable.**

In an action by the plaintiff to rescind a loan made to a construction company on the ground of fraudulent representations and to recover the balance due thereon, said company, defendant bank, and an officer and an agent thereof, all are equally liable, where it appears that the plaintiff made the loan in

reliance upon the false statements of said officer and agent, made primarily for the purpose of collecting a worthless check held by the bank, and upon the assurance of said officer and agent of the bank that the loan would be properly secured.

Moreover, the fact that the bank profited by plaintiff's investment and thereafter failed to repudiate the fraud and make restitution therefor brings the case well within the doctrine of imputable fraud.

ACTION brought to rescind a loan of $15,000 made by plaintiff to the defendant Montville Construction Company, on the ground of fraudulent representation, and for the recovery of $9,318.69, the balance remaining due on the said loan.

*Battle, Vandiver, Levy & Van Tine,* for the plaintiff

*Jonas & Neuberger,* for the defendant bank.

*Griggs, Baldwin & Baldwin,* for the defendants Banning and another.

FABER, J. The complaint alleges, among other things, that the defendants O'Shea and Montville Construction Company were engaged in a contracting business, O'Shea owning practically all of the stock of the company and controlling it; that the defendants Banning and Lockwood were agents and employees of the defendant Gotham National Bank of New York, Banning being one of the assistant vice-presidents; that, prior to the month of April, 1923, the bank had loaned O'Shea or the Montville Construction Company about $2,400, which loan was evidenced by a promissory note of the construction company and O'Shea, payable to the order of the bank, falling due the early part of the month of April, 1923; that the plaintiff became acquainted with the bank and its agents and employees, the defendants Banning and Lockwood, the latter part of April, 1923; that at that time the bank was seeking to collect its said loan made to O'Shea and the construction company, the note having been at that time protested for non-payment; that the defendants Banning and Lockwood represented to the plaintiff that the bank desired to collect its indebtedness from O'Shea and the construction company, and that said company and O'Shea were also desirous of securing additional money to pay off indebtedness and to finance construction contracts; and that the defendants all made false and fraudulent representations to the plaintiff in April, 1923, upon the faith of which plaintiff advanced $15,000. The complaint then alleges numerous fraudulent statements of fact which it is unnecessary to recite here, and further pleads that the false statements induced plaintiff to make the loan of $15,000; that part of it has been repaid, and that plaintiff is and was willing to turn back and did tender all papers that he received in the trans-

action upon receipt from defendants of the balance of the loan. The answers of all the defendants are, in effect, general denials. The defendants O'Shea and Montville Construction Company did not appear at the trial.

The proof establishes that in April, 1923, the plaintiff, who had previously been engaged in business in Pennsylvania, in Texas, and the Southwest, had accumulated some $15,000 to $25,000, and came to New York with a view to making a business connection. He wished to invest his money in safe securities or to make a loan for a short period upon good security, if by so doing he could make a business connection, and insure an income for himself. One of the plaintiff's few friends in New York was a Mr. Lewis, who also knew Banning, one of the defendants, and knew him to be an employee of the defendant bank, and considered him a man of integrity and responsibility. Mr. Lewis gave plaintiff a letter of introduction to Banning. The plaintiff presented this letter, and told Banning of his wishes. Banning had a desk in the main office of the defendant bank, and was held out to be, and in fact was, a responsible executive officer of the bank, whose duties were to obtain new business, to investigate and to make recommendations concerning credit loans and credits, and to attend to collections for the bank, to interview persons who did business with the bank, and, generally, to discharge the duties of a bank officer. Banning told plaintiff, on the occasion of his first visit, that he knew of nothing at that time, but if he heard of anything such as plaintiff desired he would notify him. Subsequently, and on April 11, 1923, he requested plaintiff to call on him. Plaintiff did call, and Banning introduced him to Lockwood, who was a special representative of the bank, and whose duties were to get new business, to investigate and make recommendations concerning credit loans and credits, and to attend to collections for the bank, to interview persons who did business with the bank, and, generally, to discharge the duties of a bank officer, and do whatever the executive officers of the bank assigned him to do. Lockwood told plaintiff of the opportunity to invest $15,000 in the business of O'Shea and the Montville Construction Company. Banning took part in the conversation between Lockwood and the plaintiff. It was in this conversation that Banning and Lockwood made the fraudulent representations which are the basis of this action. Plaintiff told Lockwood he would think the matter over and decide what to do. The next day he called at the bank and had a further talk with Banning and Lockwood, and concluded to make the investment recommended by them.

At this time O'Shea and his Montville Construction Company

were indebted to the defendant bank on a promissory note for $2,450, which had been protested for non-payment, and had been unpaid since March twenty-sixth, at least two weeks before the negotiations between plaintiff and Banning and Lockwood, which fact was not disclosed to plaintiff. From the proceeds of the $2,450 note, defendant bank had been paid a prior note for $650 which had also been protested for non-payment. The $650 note was given in part renewal of a $950 note previously discounted, from which an original loan of $250 to O'Shea and his company was paid. Such a record shows the financial weakness of O'Shea and his company. In this situation Banning and Lockwood recommended the loan of $15,000 by plaintiff to the Montville Construction Company. They had, prior to meeting the plaintiff, made an agreement with the Montville Construction Company by which Lockwood was to be elected vice-president and treasurer and to have forty shares of the preferred stock of the construction company issued to Lockwood and forty per cent of the net profits of the company were to be paid to him and it was understood that Banning was to have one-half of such forty per cent. The note of $2,450 owing to the bank, and past due, was uncollectible, and the bank stood in a position to lose that amount. As matters then stood, the bank would have lost $2,450 had not the plaintiff advanced the $15,000 loan to the Montville Construction Company, and the defendants Banning and Lockwood made the fraudulent representations complained of to the plaintiff for the purpose, primarily, of securing the defendant bank. This was accomplished, as the bank received $2,450 out of the $15,000 loan by plaintiff.

Defendants Banning and Lockwood represented to plaintiff that O'Shea was worth $80,000 in real estate; that its value had been looked up by the bank; that it was subject only to a $9,000 mortgage on part of it; that O'Shea and his construction company had valuable construction machinery at Long Island City, which had been appraised by the bank, and which was of the market value of $38,000 or $40,000; that Lockwood had inspected the machinery for the bank, and the same had been appraised by the bank, which had taken a chattel mortgage thereon as security for a note; that O'Shea and his company had a certain provisional contract to lay streets and sewers in Waterbury, Conn., on a cost plus ten per cent basis, the cost amounting to approximately $1,400,000; that the machinery at Long Island City was ample security for advance of $15,000 by the plaintiff, because the bank had inspected it as collateral and had taken a chattel mortgage upon it as security for its loan, and that the bank never took anything without looking into it; that, in making an advance of $15,000, plaintiff would have

the benefit of the bank's investigation of O'Shea's and the Montville Construction Company's assets; and that O'Shea's personal indorsement alone was sufficient security for a $15,000 loan.

These statements were knowingly false. The actions of Banning and Lockwood and their talks at the office of plaintiff's attorney at the time of signing certain agreements make it still more clear that they were primarily ·interested in collecting the worthless $2,450 note held by the bank, as the first ·thing they did with the proceeds of the loan was to pay the bank. Banning and Lockwood claim, however, that in making the statements to the plaintiff as to the property of O'Shea and the construction company, they told plaintiff they were stating only what O'Shea had told them, and they deny having said that the machinery at Long Island City had been inspected and appraised by the bank. The plaintiff's version is clearly established by the proof. It is incredible that plaintiff would loan $15,000 without some assurance from Banning and Lockwood that such loan would be amply secured. Having reached the conclusion that the defendants Banning and Lockwood did knowingly make the false statements complained of, there is presented the question as to the bank's liability for the acts of Banning and Lockwood, or either of them.

On behalf of the bank, it is contended that the plaintiff must prove, as against the bank (1) representation, falsity, scienter, deception and injury (*Rives* v. *Bartlett*, 215 N. Y. 33, 35; *Reno* v. *Bull*, 226 id. 546); (2) that the acts and knowledge of Banning and Lockwood are binding upon the bank only if they acted and acquired their knowledge as the bank's agents, acting within the scope of their authority (*Henry* v. *Allen*, 151 N. Y. 1, 11; *Taylor* v. *Commercial Bank*, 174 id. 181; *Cushman* v. *Amend*, 176 App. Div. 224, 229); (3) that, assuming Banning and Lockwood made the alleged false representations, they are in no way binding upon the bank, because they had no authority to make such representations in behalf of the bank, and their knowledge of the falsity of such representations was not the bank's knowledge (*Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 58; *Taylor* v. *Commercial Bank*, 174 id. 181; *Mapes* v. *Second Nat. Bank*, 80 Penn. St. 163); (4) that Banning and Lockwood's personal and individual interests by them and plaintiff sought to be promoted by the transaction disqualified them as agents of the bank for any and every purpose (*Florida Nat. Bank* v. *Merchants' & Farmers' Bank*, 227 Fed. 714, 715; *Benedict* v. *Arnoux*, 154 N. Y. 715, 728; *Cushman* v. *Amend, supra;* *Flanagan* v. *Shaw*, 74 App. Div. 508; affd., 174 N. Y. 530); and (5) that the entire transaction alleged was *ultra vires* of the bank (6 Fed. Stat. Ann. [2d ed.] § 5136, p. 654).

I am in accord with the contention of counsel as to the law laid down in the cases cited, but the facts in the instant case are quite different from those in the cases referred to. Here we have the defendant bank profiting by the fraud of its agents, viz., receiving the payment of a worthless note. As was said in *Taylor* v. *Commercial Bank (supra)*: " It is an established principle of law that where a person acts for another who accepts the fruits of his efforts, the latter must be deemed to have adopted the methods employed, as he may not, even though innocent, receive the benefits and at the same time disclaim responsibility for the fraud by means of which they arose. (*Garner* v. *Mangam*, 93 N. Y. 642; *Krumm* v. *Beach*, 96 N. Y. 398; *Fairchild* v. *McMahon*, 139 N. Y. 290.)   \*   \*   \* Justice points out, and authority supports justice in maintaining, that where a corporation takes advantage of the fraud of their agent, they cannot afterwards repudiate the agency and say that the act which has been done by the agent is not an act for which they are liable." (See, also, *Abraham* v. *American Exchange National Bank*, 191 App. Div. 594; *Green* v. *des Garets*, 210 N. Y. 79; *People* v. *Tweed*, 5 Hun, 382; *Churchill* v. *St. George Development Co.*, 174 App. Div. 1; *Bloomquist* v. *Farson*, 222 N. Y. 375; *Rockey River Development Co.* v. *German American Brewing Co.*, 193 App. Div. 197; *Merchants' National Bank* v. *Tracy*, 77 Hun, 443.)

The defendant bank not only received the benefits of the fraudulent representations of its agents, but failed to repudiate them and refused to make restitution when the fraud was brought to its attention. The case of *Deyo* v. *Hudson* (225 N. Y. 602), stressed by counsel for the bank, has been considered, and I find nothing there in conflict with my views already expressed. The crux of this case is that the defendants Banning and Lockwood, in making the false representations complained of, did so for the primary purpose of collecting a worthless note, thus yielding a profit to the bank and bringing this case within the doctrine of imputable fraud. In this respect it differs from the cited cases.

The proof also justifies the conclusion that all of the defendants participated in the fraud complained of and are, therefore, each equally liable. (*Green* v. *des Garets; People* v. *Tweed,* and *Churchill* v. *St. George Development Co., supra.*)

Judgment is directed in favor of plaintiff against all the defendants, with costs. Settle findings on notice.